Mary Hardy vs. Stevenson.

No. 6204.

MARY HARDY VS. JOHN A. STEVENSON.

An arrest, without probable cause, raises a presumption of malice.

On assessing the damages for an illegal arrest the *character* of the complainant should have some influence in determining the amount of damages.

APPEAL from the Fifth Judicial District Court, parish of Iberville. Trial by jury. *Dewing,* J.

*Barrow & Pope, T. & E. J. Ellis,* and *James Lingan,* for plaintiff and appellant.

*Breaux, Fenner & Hall,* for defendant.

The opinion of the court was delivered by

MORGAN, J. In Leovy's Digest of City Laws, page 323, article 680, is found the following ordinance: "It is unlawful to abuse, provoke, or disturb any person, to make charivari, or to appear masked or disguised in the streets, or in any public place."

On the seventeenth of September, 1873, John A. Stevenson, the defendant, went before the then recorder of the First District and made the following affidavit:.

"John A. Stevenson, Upper City Hotel, who having been duly sworn doth depose and say that on the seventeenth day of September, 1873, on Gravier street, in this district and city, one Mary Keener did then and there, while affiant was conversing with friends, rudely present herself to him and address him in threatening and insulting language. And affiant further says that the accused has frequently heretofore assailed him in a manner scandalizing him greatly, and for the purpose of illegally extorting money from him, and affiant believes, and has reason to believe, that the accused will commit a further breach of the peace unless she be restrained by law. All against the peace and dignity of the State. Wherefore deponent charges the accused with insult and abuse and disturbing the peace, and prays that she be arrested and dealt with according to law.".

Under this charge plaintiff was locked up in a cell from about one o'clock to eleven o'clock p. m., when she was released on bail. Subsequently the proceedings were dismissed, no one appearing on the day of trial to prosecute. She brings this suit for fifty thousand dollars damages for false imprisonment.

We give the statement of the defendant as to the cause of the arrest. He says that on the day in question, while he was in conversation with a gentleman on Gravier street, near St. Charles, he saw the plaintiff; that he attempted to avoid her, knowing that she would speak to him; that after walking a few steps he met another gentleman with whom he stopped to speak, and had said but a word or two when plaintiff pre-

Mary Hardy vs. Stevenson.

sented herself close to him, with looks of menace; that he left this gentleman, going toward the corner; that plaintiff followed close by his side until he reached a point where another gentleman was standing, to whom he spoke, saying, "Here is this woman following me and annoying me again." He requested the gentleman to endeavor to induce her to go away from him. The gentleman asked plaintiff, "Why don't you let this man alone?" To this question she made no reply that he recollects, except by her manner and looks, which were defiant. His companion repeated the question, and then said to him that he would have to resort to the police. They then went up St. Charles street, the plaintiff following closely, so closely that his companion feared she would do him (the defendant) some great bodily harm. He says he made the affidavit to protect himself from the plaintiff's following and approaching him in the streets before gentlemen, and from being scandalized, and to get his peace and that of his family. There is no evidence that the plaintiff assaulted the defendant, or that she even spoke rudely to him when she saw him on Gravier street, or during their walk to the recorder's office. What occurred while she was before the recorder we take from the recorder's testimony. He says that Stevenson came to his office and stated that the plaintiff annoyed him; that she met him in the street and was using language which was not respectable (respectful) to him, and he wanted to put a stop to it; that plaintiff accompanied him; that defendant remarked if she would give a bond to keep the peace it was all he would require; that he, the recorder, asked her if she would give the bond, and that she answered no, that she had done nothing to Mr. Stevenson which would require her to give a bond; that Stevenson then said he was willing she should give her own recognizance, which she refused; that he told her if she did not he would have to send her to prison; that she said she did not care, she would not give a bond; that she had done nothing that would require it. Then the affidavit was made against her, and then, without an investigation as to the facts alleged therein, she was "locked up." Her own account of what occurred up to the time of her incarceration does not differ in any material particular from the testimony of the defendant and his witnesses. She was confined in a cell. The turnkey endeavored to find two parties whom she named, but was unsuccessful. Her residence was distant from the place of her imprisonment, and her daughter, with her companion, came to her between eight and nine o'clock at night. Plaintiff was standing up when they came; she was separated from them by iron bars; she endeavored to reach them, but, overcome by emotion, she staggered and fell upon a box containing nuisance ; when she recovered she was lying on a filthy mattress, which was alive with vermin.

Taking the case as it is stated by the defendant, and confining ourselves

Mary Hardy vs. Stevenson.

entirely within the limits of the occurrences of the seventeenth of September, as the defendant insists that we should, and we have before us an arrest and imprisonment at the instance of the defendant without any justification therefor. The affidavit upon which the plaintiff was imprisoned was false, and is proved to be false by his own testimony. It charges the plaintiff with having rudely presented herself to him, addressing him in threatening and insulting language, with abuse, and with disturbing the peace. His own testimony shows that she did not abuse him; that she did not threaten him; that she did not insult him; and that she was not disturbing the peace. This case is one in which a man, using the machinery of the law to that end, caused the arrest of a woman who was doing no wrong, and had her confined in the cell of a prison without any justification whatever therefor. That the plaintiff is entitled to exemplary damages for such treatment can not be questioned.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be avoided, annulled, and reversed, and it is now ordered, adjudged, and decreed that the plaintiff do have and recover judgment against the defendant in the sum of five thousand dollars, with costs in both courts.

Wyly, J., *dissenting.* I agree that the defendant caused the arrest of plaintiff without showing probable cause. Malice is presumed. Damages should be imposed, but five thousand dollars is disproportionate to the offense; it is excessive. I think one thousand dollars sufficient. The policy of the law in enforcing vindictive damages is to correct the evil— to deter others from committing the offense. It is not to enrich the party wronged, or to destroy the wrong-doer.

I therefore dissent in this case.

Rehearing granted.

### ON REHEARING.

The opinion of the court was delivered by

Spencer, J. This case has been twice tried by jury in the lower court. On the first trial the jury gave a verdict for plaintiff of ten thousand dollars. On the second, a verdict for defendant. Judgment having been entered accordingly, plaintiff prosecutes this appeal. The case is now before us on a rehearing, granted by our predecessors to the defendant, who was, by the decree of this court, condemned to pay plaintiff five thousand dollars damages.

On the first hearing in this court, the opinion was unanimous that the arrest of plaintiff, on the seventeenth of September, 1873, was procured

Mary Hardy vs. Stevenson.

by defendant without probable cause, and therefore, by presumption, maliciously.

We have given the facts of this case very careful consideration, and are constrained to the same conclusion as our predecessors, that the arrest on the seventeenth of September, 1873, was without probable cause, as shown by the defendant's own statements as a witness. He says " that he was not threatened by words by the plaintiff, Mrs. Hardy, that day, September seventeenth; she did not use any threatening language that day while he was talking with his friends on Gravier street; she used no threatening language before Judge Hunt spoke to her, and no insulting language; she used no language at all. That it was her rude and brusque manner in presenting herself to him and her angry looks that constituted the breach of the peace complained of in his affidavit; that the threatening and insulting language he complained of in the affidavit was such as this: "Are you not going to do something for me? When are you going to do something for me?" She did not threaten him personally that day in words, or abuse him personally that day, beyond the usual running conversation she had with him while walking with him up St. Charles street. * * * She was not talking very loud, etc.

This statement of the facts by the defendant himself is certainly inconsistent with his affidavit that she " did then and there, while affiant was conversing with friends, rudely present herself to him, and address him in threatening and insulting language."

If this affidavit was made under the city ordinance declaring it " unlawful to abuse, provoke, or disturb any person * * * in the streets or in any public place" (which seems doubtful), we do not think the facts stated amount to the offenses of " abuse, provocation, or disturbance " contemplated by that ordinance.

We do not wish to be understood as indorsing the proposition that a woman of doubtful character has the right to shadow, and, as it were, dog a man about the streets, for the purpose of annoying him or extorting money from him. We have no doubt that defendant (not without fault himself) had been on many occasions greatly annoyed—perhaps "abused, provoked, and disturbed "—by the plaintiff. But on this particular occasion we do not find in her conduct such abuse, provocation, or disturbance as would excuse the defendant in having her arrested and imprisoned. We think he acted unwarrantably and hastily, and must pay the plaintiff such damages as will reasonably compensate her for the injury and wrong done to her person, her feelings, and reputation.

In the oral argument the counsel suggested that it was desirable that the court should now finally dispose of this case, without remanding it

for another trial by jury. We concur in these suggestions, for this record does not re-assure one of the advantages of jury trials.

We are not inclined to award the plaintiff vindictive damages. The proofs in this record satisfy us that, though not excusable for arresting the plaintiff on the seventeenth of September, the defendant had previously suffered great annoyance from her. That she had not always, even on the streets, conducted herself toward him in a very ladylike manner. She was a mature woman and widow when her acquaintance with him began, and has no very great claim to sympathy for the results, certainly not much more than he has. Both, perhaps, deserve the pity of the charitable, for "to err is human."

We do not think that plaintiff is entitled to such damages as would be awarded to a pure and unblemished woman; character, reputation, ought to be considered, as well as the actual physical and mental suffering of the injured party. Considering all the facts, condition of the parties, the length of imprisonment, its effect upon plaintiff's health, the mental suffering resulting from the incarceration, her standing in the community, we think that a judgment for fifteen hundred dollars is sufficient compensation to her and ample punishment of the defendant.

It is therefore ordered, adjudged, and decreed that the verdict of the jury and the judgment of the lower court be avoided and reversed; and it is now ordered and decreed that the judgment heretofore rendered by this court be amended so as to reduce the amount allowed the plaintiff to fifteen hundred dollars, and that defendant pay costs of both courts.