### BENJAMIN GRANT *v.* STEPHEN DEUEL.

To maintain an action for a malicious prosecution, the plaintiff must prove : *first*, the prosecution ; *second*, that the defendant was the prosecutor, or the cause of the prosecution ; *third*, that he was actuated by malice ; *fourth*, that there was no probable cause for the prosecution.

In an action for a malicious prosecution, malice may be established : *first*, by proving express malice ; *second*, by showing want of probable cause for the prosecution. Malice is usually inferred from the want of probable cause.

It is a well settled rule of law, founded on principles of policy and convenience, that the prosecutor shall be protected, though his private motives may have been malicious, provided he had probable cause for the charge. Where express malice has been proved, there must be some positive evidence to show that the prosecution was groundless, though slight evidence will be sufficient.

3r 17
106 216

3r 17
111 335
111 336

3r 17
113 890

3r 17
116 439

An acquittal, or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause.

Proof that the jury entertained doubts on the evidence, or deliberated as to the guilt of the accused after the case was concluded, is proof of probable cause for the prosecution.

APPEAL from a judgment of the District Court of St. Landry, *King*, J., in favor of the plaintiff, for one hundred and twenty dollars damages.

*Martin* and *King*, for the plaintiff.

*T. H. Lewis* and *W. B. Lewis*, for the appellant.

GARLAND, J.    This is an action to recover damages for a malicious prosecution, and for the injury sustained by the plaintiff's character and health in consequence of it, and of his confinement in prison at an inclement season of the year.    There was a judgment rendered on the verdict of a jury in favor of the plaintiff, and the defendant has appealed.

At the November Term, 1841, of the District Court in the parish of St. Landry, the plaintiff was indicted and tried, with another person, for stealing some hogs, alleged to have belonged to the defendant, and acquitted of the charge.    Being unable to give the bail required for his appearance, the plaintiff was confined in prison for several days previous to his trial, in cold weather, where it appears that he suffered considerably from the want of sufficient bedding and clothing; and it is shown that he was afterwards much indisposed in consequence of the exposure and confinement.    The prosecution was commenced at the instance of the defendant, who called on the District Attorney, told him that he had been informed that the plaintiff and another person had been stealing his hogs, named the witnesses by whom the crime could be proved, and requested the attorney for the State to lay the matter before the Grand Jury.

To maintain this action, it is necessary to prove ; *first*, that the plaintiff was prosecuted ; *second*, that the defendant was the prosecutor; *third*, that the defendant was actuated by malicious motives; and *fourth*, that there was no probable cause for the prosecution.

That the plaintiff is the person who was prosecuted is not denied.    That the prosecution was commenced in consequence of the complaint made by Deuel to the District Attorney is unquestiona-

ble. He was not, perhaps, a prosecutor, in the legal meaning of the term in England and in many of the States where the common law prevails, yet he was the *actor* or moving cause in the prosecution, and is liable in damages for any injuries the plaintiff may have sustained, unless protected by law. 2 Starkie on Evidence, 908. 2 Bouvier's Law Dic. 306. 1 Chit. Cr. Law, 1 to 10.

The malicious intention of the defendant may be established in two modes; *first*, by proving express malice; *second*, by showing that there was no probable cause for the prosecution. If the first be proved, still some evidence of want of probable cause must be given; but, slight evidence will be sufficient. 2 Starkie on Ev. 914. 1 Camp. 203. The fact of malice is usually inferred from the want of any probable cause or excuse for the prosecution. 2 Starkie, 912. 1 Salkeld, 14. 1 Lord Raymond, 374. Addison's Rep. 270.

The plaintiff has endeavored to prove express malice in this case, in which we think he has not succeeded. His counsel urges, that malice is shown from the conversation which took place between the parties in presence of the witness Thayer. The purport of this conversation was, that defendant told the plaintiff he had understood that he (plaintiff) had been stealing some of his (defendant's) hogs, which he had purchased from Caswell, and threatened to prosecute him for it. Deuel said he would have his hogs or he would prosecute. He told Grant in what way he got the hogs, and said that he would prosecute any one who should take them. Grant admitted he had killed some hogs for Caswell or his wife, and something was said about selling the hogs. In these remarks, we cannot discover that wicked and perverse disposition which shows a heart regardless of social duty, and bent on mischief. They indicate that state of feeling, which would arise in the bosom of most men when informed that their property had been unlawfully taken from them, and when they saw the supposed wrong-doer before them.

It is further urged, that the defendant entertained malicious feelings towards the plaintiff, because he had failed in his improper designs upon the person of a married daughter of Caswell's wife, and in consequence of the not very delicate remarks made.

to him by the plaintiff. It appears to us that this is rather a strained conclusion. The plaintiff is not in any manner connected with the two females in question. He does not appear to have been informed of the designs of the defendant, or to have interfered in any manner with his purposes; it is, therefore, difficult to believe that the defendant, on that account, entertained towards him any such malicious feeling as would induce the commission of an unlawful and wicked act. The plaintiff and defendant had never had any difficulty previously. They lived a considerable distance apart, and were but slightly acquainted with each other. If the defendant entertained any malicious feelings, in consequence of his alleged disappointment, they would most probably have been vented upon Caswell's wife, as it is shown, that she was the person who employed the plaintiff to kill the hogs, and received the fruits of his labor.

The inference of malice is involved in the question of probable cause, which we will now consider. This is a question of law, arising out of the facts.

Where a party prosecutes another on a criminal charge, it is a well settled rule of law, founded on principles of policy and convenience, that the prosecutor shall be protected, though his private motives may have been malicious, provided he had probable cause for preferring the charge. 1 Term Rep. 520. 1 Salkeld, 14, 15, 21. This protection is not only one of convenience, but of justice and necessity; and if proof of want of probable cause were not required on the part of a plaintiff, every prosecutor would be exposed to an action, in every case of acquittal. There must be some positive evidence to show that the prosecution was groundless. 2 Starkie on Ev. 913. 15 La. 279. 2 Wash. C. C. R. 465. 1 Peters' Dig. 62, Nos. 300, 301.

It is not sufficient, on the part of the plaintiff, to show that he was acquitted of the charge; he must prove that there was no reasonable ground for it. 9 East, 361, 363. It is not necessary, in the present case, to detail all the evidence given on the trial, to show that there was no probable cause for the indictment. It was, in our opinion, sufficient to authorize the acquittal of the plaintiff; but it is not every verdict of "not guilty", nor even subsequent proof of complete innocence, that shows a want of proba-

ble cause in the incipient stages of a prosecution. A man's con-
duct may, from his folly, his neglect, or his ignorance, be such as
to justify a suspicion of guilt, and produce a prosecution in the
course of which it may be made to appear that he is clearly inno-
cent; but this will not authorize an action for a malicious prose-
cution. But independent of the facts of a case, there are certain
acts on the part of the tribunals, which the law says go very far
to show probable cause. If it appear that the jury, on the trial of
the plantiff, entertained doubts about the evidence, and deliberated
as to his guilt after the case was concluded, it seems to be evi-
dence of probable cause. 2 Starkie on Ev. 916. 3 Esp. R. 7.

In Massachusetts it has been held that the conviction of the
plaintiff by a justice having jurisdiction of the offence, is conclu-
sive evidence of probable cause, although he was acquitted on ap-
peal. 15 Mass. 243. In Virginia, a magistrate's committing a
person accused of felony, or binding him in a recognizance to ap-
pear at court and answer the charge is sufficient evidence of pro-
bable cause, though the party be afterwards acquitted ; unless he
prove clearly there was no probable cause. 4 Munford, 462. In
this case, it appears the Grand Jury not only found a true bill, but
that the petit jury deliberated for ten or fifteen minutes as to their
verdict. These are strong circumstances of probable cause for
the prosecution, in the absence of any proof of fraud or perjury to
produce such results.

Independently of the legal presumptions of law already stated,
the evidence discloses sufficient grounds of probable cause.
Deuel had such a legal right to the hogs as would enable him to
maintain a prosecution for stealing them. He was informed by
Arnais, some months before the District Court, that the plaintiff
and Caswell had killed his hogs. The hogs had disappeared, and
when the defendant, in the conversation at Thayer's, charged the
plaintiff with stealing them, he did not make any such explanation
as was calculated to remove the defendant's suspicions. When
he spoke to Caswell on the subject, he says that he replied : " if
I have killed any hogs of yours make me suffer for it." There is
no doubt that some hogs were killed. All the witnesses state that
fact ; and the question is, whether they were the hogs of Deuel pur-
chased at the sheriff's sale of Caswell's property ? Caswell and

his wife swear that they were not ; but were taken out of a gang that belonged to Caswell's wife as her separate property. Bihm, who assisted Grant in killing the hogs, says that they were Caswell's wife's. None of the other witnesses knew to whom the hogs belonged, nor what marks they bore, except Arnais, who. says positively that they were Deuel's hogs ; and Henry Ort swears that Caswell's wife told him that the hogs Grant killed belonged to Deuel, being the same purchased by him at the sheriff's sale, and told him to tell Deuel that she would pay for six of them if he would not prosecute.

It has been strenuously urged upon us that the witness Arnais. is unworthy of belief, and that his testimony carries falsity upon its face. We cannot so consider it. One witness says that he would not believe Arnais at all. One of the jury being sworn, says that he knows him, and has " no reason to disbelieve him."

In conclusion, we have to say, that actions of this description are not to be favored. We would scarcely fix a limit to the damages in a case where it could be shown that any one, for malicious and vindictive purposes, had availed himself of the criminal laws of the country to injure and oppress another without cause ; but, we are unable to see any such purpose on the part of the defendant ; and public policy and the proper administration of the criminal code, require us to protect him.

The verdict of the jury is set aside, and the judgment annulled ; and ours is for the defendant, with costs in both courts.