No. 2080

Second Circuit ·Appeal

WILLIAM J. BROWN v. SAM. D. DAW-
KINS ET AL.

(May 9, 1925, Opinion and Decree)

(See Brooks vs. Dawkins, p. 674, herein.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Malicious Prosecu-
tion—Par. 3.**

The fact that "B" was found in possession
of some stolen articles, that it was not
known that he had them all; that the
physical facts showed that "B" had
assistance in the burglary were not
sufficient to show probable cause for
causing an arrest of "A" merely be-
cause it was known that "A" had been
on a freight excursion with "B."    The
one responsible for the arrest is liable
in damages.

2. **Louisiana Digest—False Arrest—Par. 5.**

A peace officer who was placed in posses-
sion of a warrant issued by a compe-
tent magistrate, commanding an ar-
rest, had a right to presume that the
warrant was based on proper affidavit
which constituted probable cause.

(Civil Code, Art. 2315, 2316. Editor's
note.)

Appeal ·from Fifth Judicial District Court
of Louisiana, Parish of Jackson.    Hon. R.
W. Oglesby, Judge.

This is a suit for damages for malicious
prosecution and false imprisonment.

There was judgment for defendants and
plaintiff appealed.

Judgment affirmed as to defendant Car-
son and reversed as to defendant Dawkins.

Holstead & Thompson, of Ruston, attor-
neys for plaintiff, appellant.

Dawkins & Dawkins, E. L. Walker, of
Monroe, attorneys for defendants, appel-
lees.

CARVER, J.   Plaintiff on behalf of his
minor son, Veldon Brown, sues S. D. Daw-
·kins and R. A. Carson for damages for
malicious prosecution and false imprison-
ment.

Carson having died pending the suit, his
administratrix was made a party.

The defense is that defendants acted
without malice and upon probable cause.

The proof shows that at about 8:30
P. M. on Sunday, April 9, 1922, about
fifteen youths got on a freight train at
Jonesboro and rode about two miles when
they got off and walked back to town,
arriving there between 10 and 11 o'clock.
Amongst these were Veldon Brown, Ed-
ward Brooks and Walter Phillips.

Some time during that night the drug
store of Jones Brothers Drug Company,
of which Dawkins was manager, was
broken open and various articles, con-
·sisting mainly of candy, pocketknives,
kodaks and watches, were stolen.

Entrance was obtained by climbing a
telephone pole leading to the roof of a
gallery and tearing loose a screen over
the transom of a door or window.

From the physical appearances it was
believed that more than one person was
engaged in the burglary, but there is no
suggestion as to how many were so en-
gaged.

Dawkins reported the matter to Deputy
Sheriff Rentz, who began an investigation.
He telephoned to the sheriffs of Lincoln
and Winn parishes.   He learned, and re-
ported to defendant, Dawkins, that Walter
Phillips had been arrested at Ruston and
that various articles corresponding to some
of those stolen had been found in his
possession, and also that he had sold or
traded off a number of other articles so
corresponding.

Rentz and one Hardy had obtained a list
of eight or nine boys supposed to have
been amongst those on the freight train
excursion and Rentz told defendant Daw-
kins that if these boys were arrested

some of them would probably get weak-kneed and tell about it, and that he believed some of them knew something about it.

Thereupon Dawkins went before a justice of the peace and procured a warrant for their arrest. The warrant charged them with breaking, entering and stealing from the store of the Jonesboro Drug Company, Inc. Dawkins says he did not make an affidavit, but there is no pretense that he did not initiate the prosecution by at least asking for the warrant.

The warrant was given to Carson, the town marshall of Jonesboro, who arrested Veldon Brown, Edward Brooks and others. He put them in jail, where they remained from two to four hours. Brown was bonded out by his father.

Dawkins went with Rentz to Ruston to see Phillips. He testified (page 43):

"Q. What did Rentz do when he got to Ruston?
"A. He went over to the courthouse and at first could not get in touch with the sheriff, and when we found him he told us where the stuff was and we went down and looked at the stuff and then went down to the jail just before train time and we brought the boy and the stuff on back with us.
"Q. Now what things did you find there in the custody of the sheriff that had been missing from the drug store?
"A. We found all the stuff that had been taken, and he admitted to the sheriff that evening where he could go and find the other stuff. He said that in the sheriff's office or in the recorder's office there was a bunch of jewelry that I had out in boxes and fountain pens and pocketknives and a kodak and fishing tackle of all kinds."

In saying "we found all the stuff" we suppose he meant he found "most of the stuff."

Phillips admitted that with him in the burglary were two other boys whose names he refused to give but said they were not any of the eight or nine against whom the warrant had been issued. Upon this the prosecution was dropped as to all the boys, except Phillips, those remaining unbonded being released without bond. Subsequently Phillips plead guilty. None of the others were indicted.

Previous to this burglary there had been several other burglaries and larcenies in the town, the things stolen showing that juveniles were probably the culprits. There was a curfew law prevailing in Jonesboro at the time of the burglary herein involved, prohibiting minors from being on the street after 10 o'clock P. M. Little, if any, obedience was paid to this law, according to the testimony of the plaintiff, Brown. Edward Brooks had previously been found in company with a crowd of boys "shooting" dice at the store of one Gray and had been arrested, charged with breaking into a school house. The evidence does not show what became of this charge. There is no pretense that Veldon Brown had ever been charged with any offense, though it is argued that in riding on the freight train and in being out after 10 o'clock P. M. he violated the law.

Our learned brother of the District Court rejected plaintiff's demand, but not having furnished us with a written opinion we do not know the precise ground of his decision. Whatever it was, though, we are unable to agree with him in his conclusion.

In our opinion the case of Lange vs. Illinois Central R. R. Co., 107 La. 687, 31 South. 1003, correctly states the law of Louisiana on the subject of malicious prosecution. After citing Civil Code, 2315, 2316,

obliging persons by whose fault, including negligence and imprudence, injury was caused to others to repair it, and the article of the then Constitution similar to the one in our present Constitution securing the right of the people against unreasonable searches and seizures and declaring that no warrant shall issue except upon probable cause supported by oath or affirmation, and also Article V of the then Constitution declaring that all courts shall be open, and every person for injuries done to him in his rights, lands, goods, person or reputation shall have adequate remedies, which article is substantially repeated in our present Constitution, the court says:

"It is our bounden duty, while seeking to uphold and vindicate the laws of the state, to see that we do not sacrifice to those interests of the public the personal constitutional rights of the citizens. It will be seen that however flexible a definition may be given to the word *malice*, and howmuchsoever the General Assembly may require the presence of *malice*, in any particular act to be a necessary factor and condition precedent to a right of action, based upon that act as a fault, the absence of malice in a particular instance can never be invoked as a defense where the action is predicated upon injury done to person or reputation by a warrant issued upon the oath or affirmation of a party, but without the existence of probable cause. The existence of probable cause may protect a person even though he be acting from malice, but the converse of this proposition is not true. The absence of malice in a particular case where a warrant has been issued without *probable* cause may lessen the relief given to the plaintiff and exclude the infliction of 'vindictive' or exemplary damages upon the person making the charge, but it will not justify courts in refusing to grant compensatory damages. To those damages plaintiff is entitled by force of the Constitution itself."

Under this statement of the law the crucial question is, did defendants have probable cause for believing that Brown was guilty of the charge for which he was arrested?

The learned counsel of the defendant Dawkins argues that he did have such probable cause from a consideration of the following facts, namely: That Phillips was found in possession of some of the missing articles; that it was not known that he had them all; that the physical facts showed that Phillips had assistance in the burglary; and that Dawkins had information of the fact that Brown had been with Phillips on the freight train excursion.

In our opinion these circumstances did not amount to probable cause. Dawkins made no effort to ascertain what time the boys got back from the excursion or what time Brown went home. His haste in causing the arrest before even waiting to see whether Phillips had all the stolen articles or not is defended by his counsel, who argues that he was afraid if any of these eight or nine boys had any of the stolen articles they might dispose of them and so destroy the evidence. We do not think this consideration a justification for his precipitate action. His including eight or nine boys in the charge goes far to support the theory of plaintiff's counsel that in making it he did not really believe they were guilty—at least all of them—but was merely casting a drag-net in the hope that he might catch the guilty one.

In the Lange case the party making the charge against Lange acted with much more circumspection than did the defendant Dawkins in this case, and the circumstances pointing to the probable guilt of Lange were much stronger than those in this case. In the Lange case the proof showed that there had recently been many thefts from the railroad company of

brasses from their cars. Several were found in Lange's shop, amongst which were some bearing the name of the defendant railroad company which had itself some of those brasses. Lange's shop was within a few hundred feet of the railroad company's terminus and track. The plaintiff's son delivered to the railroad company's employee the particular brasses which were thought to have been stolen. Notwithstanding all these circumstances the court held that the employee of the railroad company acted without probable cause in swearing out an affidavit against Lange without giving him an opportunity to explain the situation.

In the case of Sharp vs. Great Sou. Lumber Co., 134 La. 110, 63 South. 757, and Pierson against the same company, 134 La. 117, 63 South. 759, the defendant's employees had caused the arrest without a warrant of the two plaintiffs on a charge of malicious mischief in breaking electric light bulbs in defendant's mill.

Sharp was denied recovery because the proof showed he had broken some of the bulbs; but in the Pierson case, although the proof showed that Pierson was with Sharp in the mill at the time of the breaking and that they went out of their way to pass through the mill, yet the Supreme Court reversed the lower court and gave Pierson damages because he himself had not taken part in the breaking.

In this case defendant's counsel cites 26 Cyc. 24, as follows:

"In case of criminal prosecution probable cause means reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the accused is guilty of the offense with which he is. charged."

We agree with this statement of the law. Just after this statement, Cyc. proceeds:

"It has also been defined as such conduct on the part of the accused as may induce the court to infer that the prosecution was undertaken from public motives."

This citation is supported only by two decisions, namely: Ulmer vs. Leland, 1 Me. 135, 10 Am. Dec. 48; Cecil vs. Clarke, 17 Md. 508.

We do not think that this statement expresses the Louisiana law on the subject.

Defendant's counsel also cites:

Sundmaker vs. Gaudet, 113 La. 887, 37 South. 865.

O'Malley vs. Whittaker, 118 La. 904, 43 South. 545.

Bouette vs. Emmer, 43 La. Ann. 980, 9 South. 921.

Dunson vs. Baker, 144 La. 167, 80 South. 238.

Grant vs. Deuel, 3 Rob. 17.

Womack vs. Fendikar, 47 La. Ann. 36, 16 South. 645.

Lyons vs. Carroll, 107 La. 471, 31 South. 760.

Estrada vs. Kreeger, 147 La. 291, 84 South. 786.

Hynson vs. Green, 132 La. 707, 61 South. 763.

In the Sundmaker case the court found that the defendant had not initiated the prosecution, and, furthermore, that there was a great deal of probable cause to suppose the plaintiff guilty. Several cows had been stolen and one of them was found the next day in plaintiff's stable. The defendant's employee was refused permission to see the animal and a negro told the sheriff that the plantiff and his son were implicated in the larceny.

In the O'Malley case, too, the Supreme Court seems to have considered that the arrest was made upon probable cause.

In the Bouette case the defendant, as mayor of a town, arrested and imprisoned the plaintiff for disorderly conduct committed in his presence.

In the Dunson case the defendant was mayor of the town of Vivian. Dunson broke a jail to release a party incarcerated therein. Defendant was told by a reliable party that he had seen Duncan break the lock on the jail door and liberate the prisoner. The court says:

"Dunson openly committed a breach of the peace and he was subject to arrest. Defendant knew these things. It was his duty to have Dunson arrested and he had him arrested. There was probable cause for the arrest of Dunson."

The court further goes on to point out the difference between the right of a citizen and the right of an officer to arrest for felony, saying:

"An officer who has reasonable ground to suspect that a felony has been committed may detain a party until inquiry may be made. Damages will not be allowed where the prosecuting officer acted in good faith and with probable cause."

In the Grant case, the circumstances showed probable cause for suspecting Grant of having stolen Deuel's hogs. So much so that when he was tried for the larceny the jury entertained doubt as to his guilt.

In the Womack case, the plaintiff had bought goods from the defendant, including a barrel of syrup, the price of which was eight dollars. Some time afterwards he brought to the defendant a flask of syrup to see if defendant would take it back. Defendant did so, and returned the $8 to plaintiff who promised to return the syrup. Defendant gave plaintiff an order to deliver the syrup to one Tillman who had ordered some syrup from defendant.

The court says:

"He (meaning defendant) and witnesses summoned by him testified that there had been delays and failure on the part of the plaintiff to comply with the agreement to return the syrup; that he had refused to avail himself of the opportunity offered to him to deliver the syrup; and, finally, that he had threateningly sent away the one to whom it was to be delivered, so that he was afraid to go back.

"In September the defendant addressed a letter to the plaintiff in which he expressed surprise at defendant's failure to deliver the syrup."

The affidavit charged the plaintiff with having obtained money under false pretenses.

Two juries had found for defendant. The court evidently agreed with their conclusion that the circumstances of the case were such as to amount to probable cause. Besides which, the court found the defendant had in good faith acted on the advice of counsel after full disclosure of the facts.

In the Hynson case the court held that the defendant had probable cause in charging plaintiff with embezzlement of a coat intrusted to him for cleaning because the proof showed that he had reported that the coat had "walked off" and that it showed, further, that defendant's wife, who made the affidavit, had been informed by a trustworthy person that the coat was being worn by plaintiff's mistress.

In the Estrada case, the plaintiff's suit was dismissed on an exception of no cause of action because his petition failed to allege that the prosecution was without probable cause.

In the Lyons case, the lower court dismissed the suit on an exception of no cause of action. The Supreme Court affirmed this judgment because the petition affirmatively showed that defendant did have probable cause. The petition alleged that a jewel had been stolen from one Carroll; that Carroll reported the theft

to defendants who were police officers; that Carroll gave those officers plaintiff's name amongst others whom he suspected and charged with having committed the theft or being implicated in it and whom he wanted arrested and prosecuted; that on the evening after the theft defendant met plaintiff on the street and was walking along the street with him when they met Carroll, who told them plaintiff was one of the parties he thought implicated, whereupon plaintiff remonstrated with Carroll and declared his innocence, notwithstanding which Carroll said: "Never mind, I will fix you," or words to that effect, and walked away. The court says, page 474:

"On this showing it cannot be said that the police officers acted without probable cause, and that they, under the circumstances, transcended the reasonable limits of their duty in taking the plaintiff into custody. They were called upon as officers of the law to perform a public duty, to-wit: ferret out and arrest parties thought to have committed an infraction of the criminal laws, and from what occurred, as narrated in the petition, we are unable to reach the conclusion that they did not have grounds for believing, for entertaining an honest and reasonable suspicion that the plaintiff was one of the guilty parties."

What is probable cause cannot be made the subject of any hard and fast rule, and each case must turn on its own circumstances. We agree with the courts rendering the foregoing decisions that the circumstances respectively shown therein did amount to probable cause but in none of them was the ground of suspicion so meagre or the action of the prosecutor so hasty as in this case.

Defendant's counsel says that Veldon Brown and Edward Brooks were present and took part in a conversation in which Phillips outlined to the boys present how easy it was to break and enter a storehouse and enrich themselves by taking therefrom. Veldon Brown's testimony (page 9) denies having heard any such conversation. Brooks was not asked the direct question whether he heard such conversation or not, but was asked what Phillips talked about and said he did not remember. We find in the record no proof whatever of such conversation having taken place whether in or out of the presence of the boys.

Our conclusion is that defendant, Dawkins, acted without probable cause and hence is liable for damages. We do not think his conduct was malicious, though, and it is not shown that young Brown was injured in his reputation or socially or in any other way; but, of course, the arrest must have been a source of humiliation to him for which he is entitled to compensation. We think an award of $100.00 sufficient to satisfy the demands of justice.

We do not think Carson liable under the evidence. He was a peace officer and as such had the right under certain circumstances to arrest even without a warrant.

In 19 Cyc. 350, verbo False Imprisonment lays down the rule as follows:

"A peace officer is justified in an arrest made without warrant in cases of felony alike whether he acts on his own knowledge or upon sufficient information derived from others if it be shown that the person arrested was reasonably suspected of guilt. He may so be justified also where a felony has been actually or is being or is about to be committed and where, although not in fact committed, reasonable grounds for believing it was committed are shown."

The text is supported by numerous decisions from various states.

In the same volume, page 351, the text reads:

"Reasonable and probable cause for believing in the guilt of a person detained is essential to legal justification of arrest by an officer for a public offense without a warrant or by a private person and complete defense within the restrictions imposed by law. Want of malice does not alone afford protection. On the other hand, malice is immaterial if probable cause and proper conduct appear."

This text also is supported by numerous decisions.

We think Carson did have probable cause. He was placed in possession of a warrant issued by a competent magistrate commanding the arrest of young Brown. He had a right to presume that the warrant was based on proper affidavit. It is not shown that he knew upon what meager ground Dawkins had obtained the warrant. Under the authority of the Lyons case, supra, and the last citation from Cyc., he would have been justified in making the arrest without a warrant. A fortiorari did he have the right to make it with a warrant. The fact that the warrant was not addressed to him but to the sheriff cannot make him liable. The sole ground on which liability could rest was want of probable cause and this, of course, is not dependent to any extent upon how the warrant was addressed.

The judgment of the lower court is reversed as to the defendant, S. D. Dawkins, and it is now decreed that plaintiff, William J. Brown, do recover, for the use and benefit of his minor son, Veldon Brown, against Samuel D. Dawkins, judgment for the sum of one hundred dollars with five per cent per annum interest thereon from this date, and all costs of both courts; and that as to the defendant, Carson, the judgment of the lower court is affirmed.