HIGGINBOTHAM, J.
Plaintiffs, Samuel Markovich and Diamond Properties Northshore, L.L.C., seek review of a trial court judgment granting summary judgment in favor of the defendants and dismissing all of plaintiffs' claims against the defendants with prejudice.
FACTS AND PROCEDURAL HISTORY
Samuel Markovich is a commercial developer and landlord whose companies, including Diamond Properties Northshore, L.L.C., own properties in the City of Mandeville. Following Mr. Markovich's acquittal of alleged violations of Mandeville's Comprehensive Land Use Regulations Ordinances, Mr. Markovich and Diamond Properties filed the underlying suit against Christopher Brown, Code Enforcement Officer for Mandeville's Department of Planning and Development, and Donald Villere, the Mandeville mayor. Plaintiffs alleged that both defendants engaged in a series of unwarranted and malicious prosecutions against Mr. Markovich without cause. In addition, they alleged that Mr. Brown "negligently and/or maliciously published false, defamatory statements about plaintiffs to third parties" and that he tortiously interfered with Diamond Properties' contractual relationships.
In November 2010, Mr. Brown went to 3301 Highway 190 in Mandeville in response to a complaint about an unscreened dumpster and excessive trash on the property. Mr. Brown attested that a review of the tax rolls indicated that the property was owned by Mr. Markovich and/or Diamond Properties.[1]
As a result of Mr. Brown's investigation, on September 22, 2011, the City of Mandeville, through its Planning Director, Louisette Kidd, issued a Warning Notice of Violation to Mr. Markovich and Diamond Properties to notify them that the property located at 3301 Highway 190 in Mandeville was in violation of Mandeville's city ordinances due to excessive trash and *338 having an unscreened dumpster at the rear of the building. The notice indicated that a formal citation would issue within seventy-two hours of the notice unless the violation was corrected or the City's office was contacted and the question of the violation was satisfactorily resolved. Apparently, not receiving a satisfactory response, on October 3, 2011, Mr. Brown contacted Mr. Markovich via e-mail and informed him that the dumpster violation needed to be corrected. Mr. Markovich advised Mr. Brown that the dumpsters were not owned by Diamond Properties and he did not own the property at 3301 Hwy 190.
On October 21, 2011, Mr. Brown executed an Affidavit in the Mayor's Court for the City of Mandeville attesting that Mr. Markovich d/b/a Diamond Properties violated certain city ordinances related to the proper screening of trash and garbage cans. The affidavit prayed that Mr. Markovich be apprehended and held to answer for the charge. After Mr. Markovich failed to appear to retrieve his summons, a warrant was issued for Mr. Markovich's arrest.
Additionally, on October 21, 2011, the City issued a notice of a city ordinance violation to a tenant at 725 North Causeway Boulevard in Mandeville for work being performed on the exterior of a building at that location without a permit being obtained to do so.[2] Mr. Brown's affidavit states that he went to the property at issue, where it appeared to him that there had been work performed on the exterior of the building, and no one had applied for and/or received a permit to do the work observed. It was later determined that the property was owned by Mr. Markovich. Mr. Markovich informed Mr. Brown that no exterior work was being done on the property.
On December 14, 2011, Mr. Brown executed an Affidavit in the Mayor's Court for the City of Mandeville attesting that on October 21, 2011, Acadian Properties II, L.L.C. c/o Samuel Markovich, Director, willfully violated city ordinances by "perform[ing] work requiring permits without obtaining necessary permits as required." Mr. Brown prayed that Acadian Properties II, L.L.C. c/o Samuel Markovich, Director, be summoned and held to answer for the charge.
Also, on December 14, 2011, the Mandeville Police Department issued Mr. Markovich a summons for failure to obtain a required permit for work done at 725 North Causeway Boulevard, as well as a summons regarding failure to properly screen the dumpsters at 3301 Highway 190.
On the same day, December 14, 2011, the City issued another notice to Samuel Markovich and/or Diamond Properties for violations at 3301 Highway 190 regarding certain ordinances, including the failure to properly screen the dumpsters at that location.
Mr. Markovich was summoned for both violations to appear in the Mandeville Mayor's Court for arraignment on February 13, 2012, but he did not appear. Thereafter, he was charged with contempt for failure to appear. The hearing was reset for March 12, 2012, but Mr. Markovich failed to appear. As a result, the court charged Mr. Markovich with contempt for failure to appear.
On March 16, 2012, the court issued a letter to Mr. Markovich stating that if he "d[id] not request a court date or make payment of $ 390.00 within ten (10) days *339 from the date of this letter, a warrant [would] be issued for your arrest."
On October 23, 2012, Mr. Markovich was attending the Zoning and Planning Commission Meeting. Mayor Villere, when he saw Mr. Markovich at the meeting, had Ms. Kidd contact the Mandeville Police Department. At the meeting, Mr. Markovich was arrested and handcuffed in front of the members of the commission and those attending the meeting by the Mandeville Police Department for his contempt/failure to appear.
On June 10, 2014, the city prosecutor nolle prossed the charges against Mr. Markovich because he determined that there was insufficient evidence in the file to convict. Specifically, he said "with that information in the file...there's no way I could get a conviction out of that." He was then asked by the department head and the mayor why he nolle prossed the charges against Mr. Markovich and when he explained that there was insufficient evidence, he was told that they wanted to go forward with the case, and that Ms. Kidd would get him the information he needed to bring the charges. After Ms. Kidd provided the city prosecutor with additional information, the prosecutor reinstituted the charges against Mr. Markovich.
On October 15, 2014, Mr. Markovich stood trial in the mayor's court for the two re-instituted municipal charges and for four counts of contempt of court/failure to appear charges in the Mayor's Court for the City of Mandeville. After hearing the testimony of the witnesses and considering the evidence, the magistrate found Mr. Markovich guilty of one count of contempt of court for failure to appear and guilty of the municipal code violation regarding the failure to obtain permits. The magistrate acquitted Mr. Markovich on the remaining contempt charges and the charge related to screening of trash and dumpsters. Mr. Markovich applied his case bond to the $ 465.00 fine and was refunded the remaining balance of $ 925.00.
On November 13, 2014, Mr. Markovich filed a Motion for Appeal to appeal his mayor's court convictions to the 22nd Judicial District Court for the Parish of St. Tammany. Following a trial de novo, the 22nd Judicial District acquitted Mr. Markovich of all charges.[3]
In the underlying petition filed on April 2, 2015, the plaintiffs allege that both the mayor and Mr. Brown maliciously prosecuted Mr. Markovich. Additionally, the plaintiffs allege that Mr. Brown defamed plaintiffs and tortiously interfered with plaintiffs' business relationships.
Two years after the suit was instituted, Mr. Brown and Mayor Villere filed a motion for summary judgment seeking dismissal of all claims against them. Plaintiffs opposed the motion for summary judgment.
Following argument, the trial court found that defendants were entitled to judgment as a matter of law. Thereafter, the trial court signed a judgment on July 11, 2017, dismissing all of the plaintiffs' claims against the defendants with prejudice.
Plaintiffs have appealed, assigning the following as error:
1) The trial court erred as a matter of law in finding that neither Villere nor Brown maliciously prosecuted Markovich for code or permit violations.
*340 2) The trial court erred as a matter of law in finding that Brown made no defamatory statements concerning plaintiffs/appellants.
3) The trial court erred as a matter of law in finding that Brown did not interfere with Markovich's business relationships.
DISCUSSION
SUMMARY JUDGMENT STANDARD
Summary judgment is favored and "is designed to secure the just, speedy, and inexpensive determination of every action .... and shall be construed to accomplish these ends." La. Code Civ. P. art. 966(A)(2). In reviewing the trial court's decision on a motion for summary judgment, this court applies a de novo standard of review using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. In re Succession of Beard , 2013-1717 (La. App. 1st Cir. 6/6/14), 147 So.3d 753, 759-60.
The burden of proof is on the mover. If the mover will not bear the burden of proof at trial, however, the mover's burden does not require him to negate all essential elements of the adverse party's claim, but only to point out to the court the absence of factual support for one or more of the elements necessary to the adverse party's claim. Thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. Code Civ. P. art. 966(D)(1).
For purposes of summary judgment, because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Gaspard v. Graves, 2005-1042 (La. App. 1st Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 2006-0882 and 2006-0958 (La. 6/16/06), 929 So.2d 1286 and 929 So.2d 1289. Summary judgment is seldom appropriate for determinations based on subjective facts, such as motive, intent, good faith, knowledge, and malice. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 751.
MALICIOUS PROSECUTION
The tort of malicious prosecution has been recognized from the early jurisprudence of this state, and while the cause of action in favor of one "whose liberty has been interfered with in an unwarranted manner" derives from the fault-reparation principles of La. Civ. Code art. 2315, our courts have imported certain restrictions and guidelines from the common law in defining the contours of the tort. Lemoine v. Wolfe, 2014-1546 (La. 3/17/15), 168 So.3d 362, 367. The limitations on the tort imposed by these restrictions reflect a careful balance between two societal interests: the right of all persons to resort to the courts for redress of wrongs and to be protected when acting in good faith on reasonable grounds in commencing either a civil or criminal proceeding, and the right of an individual to seek redress for the malicious prosecution and unwarranted employment of the judicial process against him. Id.
To prevail in an action for malicious prosecution, a plaintiff must prove: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; (6) damage conforming to legal *341 standards resulting to plaintiff. Jeansonne v. Bonano, 2017-0828 (La. App. 1st Cir. 1/23/18), 241 So.3d 1027, 1030.
The trial court granted summary judgment on the grounds that plaintiffs could not prove the fourth element-the absence of probable cause for the proceeding. The crucial determination in regard to the absence of probable cause is whether the defendant had an honest and reasonable belief in the guilt of the plaintiff. Reese v. City of Baton Rouge, 93-1957 (La. App. 1st Cir. 10/7/94), 644 So.2d 674, 676-677. Verification may be required where the source of the information seems unworthy, or where further information about a serious charge would be readily available. Miller v. East Baton Rouge Parish Sheriff's Dept., 511 So.2d 446, 453 (La. 1987). Malice may be inferred from the lack of probable cause or inferred from a finding that the defendant acted in reckless disregard of the other person's rights. Miller, 511 So.2d at 453.
Application of the above law requires that the issues of whether probable cause and malice existed be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. See La. Code Civ. P. art. 966. The likelihood a party will prevail on the merits does not constitute a basis for rendition of summary judgment. Smith v. State, through Department of Administration, 96-0432 (La. App. 1st Cir. 5/9/97), 694 So.2d 1184, 1188, writ denied, 97-1493 (La. 11/14/97), 703 So.2d 1288.
Plaintiffs maintain that the evidence supports their claims of malicious prosecution against Mr. Brown and Mayor Villere such that this issue should be decided by a jury. Plaintiffs aver that the evidence establishes that Mayor Villere took an intense interest in Mr. Markovich throughout these proceedings, that Mr. Markovich was accused of violating the ordinance requiring certain dumpsters to be screened for property he did not own and that even after being informed of such, both Mr. Brown and Mayor Villere continued to press the charges. Additionally, plaintiffs allege that while the original citation for a violation at 725 North Causeway Boulevard arose from failure to obtain a permit for exterior work, Mr. Brown changed the charge to reflect a failure to obtain a permit for electrical work and provided an undated photograph after the charges were initially brought. Plaintiffs aver that while the city prosecutor nolle prossed the case, Mr. Brown and Mayor Villere continued to pursue claims against Mr. Markovich until they obtained a conviction on two charges in the mayor's court.
The deposition of the city prosecutor, offered in opposition to the motion for summary judgment, contains the following colloquy:
Q. Well, didn't you speak with the mayor after you nolle prossed the cases?
A. Only that I nolle prossed the cases, because the department heads called me first and asked me why did you nolle pros the cases. And I specifically told them why I nolle prossed the cases. And only in passing. I never had a meeting, per se, with the mayor, no.
Q. Okay. What discussion did you have with the mayor about the nolle prossing of the cases?
A. That they were nolle prossed. He said, "Well, why were they nolle prossed?" I said, "At the time that we knew we were going to trial and I" - the way it's set up, you know, we have on any given day on a trial day there may be twenty cases set for trial. On the cases that we think are *342 going to trial I take those cases and I study those cases. What I found on those cases were what I considered defective designations of property descriptions; and that would correlate to differences in ownership, if, in fact, those designations were incorrect. I felt, as the prosecutor ... that time, with that information in the file that would be -- there's no way I could get a conviction out of that. So I felt the prudent thing to do was to nolle pros it. That's my job. That's the decision I made.
Q. And then the mayor asked you why did you nolle --
A. No.
Q. -- pros?
A. No. The department head asked me why.
* * *
... And I said, "Look at your records. Your records are not correct." Then I was given the explanation that the reason that it was like that is because they use the tax roles [sic.] for designation of property descriptions in violations. I said, "Well, that's not good enough for me as far as prosecution goes. I need definitive -- definitive ownerships. I need definitive property descriptions." And they said, "Well okay, we'll get that."
Once the prosecutor was supplied the additional information, he prosecuted Mr. Markovich for the ordinance violations and the contempt of court charges. After hearing the testimony of the witnesses and considering the evidence, the magistrate found Mr. Markovich guilty of one count of contempt of court for failure to appear in court and guilty of the municipal code violation of failure to obtain permits. However, the district court acquitted Mr. Markovich on all charges. In his deposition, Mr. Brown acknowledged that during his tenure as a building official with the city of Mandeville, he did not recall ever issuing a citation for a dumpster violation. Mr. Brown continued to pursue Mr. Markovich regarding the dumpster violation despite being informed that he did not own the property. Even after the city prosecutor made the decision to nolle pross the charges, the city continued to pursue Mr. Markovich for fairly minimal violations, one of which was on property that they were aware he did not own. Additionally, Mr. Markovich's summons to the mayor's court noted by the trial date "per mayor" which the city prosecutor agreed was unusual and acknowledged that he had never seen the Mayor personally involved in setting trial dates.
Considering the foregoing, we find at a minimum that plaintiffs have produced factual support sufficient to establish a genuine issue of material fact regarding whether Mr. Brown and Mr. Villere had an honest and reasonable belief that there was probable cause to arrest Mr. Markovich and whether they acted with malice in instituting and pursuing the claims against Mr. Markovich. As previously noted, the issues of whether probable cause and malice existed is to be determined by the trier of fact unless only one conclusion may reasonably be drawn from the evidence. Therefore, the jurisprudence prohibits summary judgment on the issue of malicious prosecution as the evidence presented on the motion for summary judgment does not preclude the determination that probable cause did not exists for this proceeding, nor does it preclude the determination that malice was present.
DEFAMATION
Plaintiffs also allege that Mr. Brown defamed them by improperly expressing his opinion about Mr. Markovich to two new tenants of Diamond Properties, *343 Mary Kelly and Ron Gladney. The plaintiffs assert that the trial court erred in granting summary judgment on the defamation claims.
Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Costello v. Hardy, 2003-1146 (La. 1/21/04), 864 So.2d 129, 139. The fault requirement is often set forth in the jurisprudence as malice, actual or implied. Id. Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words that caused plaintiff damages. Id. at 139-40.
In Costello , the Louisiana Supreme Court explained:
Defamatory words are, by definition, words which tend to harm the reputation of another so as to lower the person in the estimation of the community, to deter others from associating or dealing with the person, or otherwise expose a person to contempt or ridicule. Words which convey an element of personal disgrace, dishonesty, or disrepute are defamatory. The question of whether a communication is capable of a particular meaning and whether that meaning is defamatory is ultimately a legal question for the court. The question is answered by determining whether a listener could have reasonably understood the communication, taken in context, to have been intended in a defamatory sense. To be actionable, the words must be communicated or "published" to someone other than the plaintiff. (Internal citations omitted.)
Id. at 140. Words that expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation, without considering extrinsic facts or circumstances, are considered defamatory per se. Id. When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Id.
When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, the elements of falsity, malice (or fault) and injury. Id. Malice (or fault), for purposes of the tort of defamation, is a lack of reasonable belief in the truth of the statement giving rise to the defamation. Id. at 143.
With regard to Diamond Properties' tenant, Mr. Gladney, plaintiffs contend that Mr. Brown sent Mr. Gladney a defamatory e-mail. The e-mail was in response to a prior telephone conversation between Mr. Brown and Mr. Gladney a few weeks before, wherein Mr. Brown conveyed that the property Mr. Gladney sought to lease was in violation of several city municipal code violations. The e-mail specifically noted the issues that needed to be resolved to bring the property into compliance with the city's regulations, including concerns related to parking lot maintenance, landscaping requirements, dumpster screening, loading ramp, bollard removal, and periodic trash removal/litter abatement. Mr. Brown courtesy copied Mr. Markovich on the e-mail. Plaintiffs aver that these alleged violations could subject the landowner to criminal charges such that the statements are defamatory per se.
The principle asserted by plaintiffs is overly broad. Imputation of criminal behavior is defamatory per se where the allegation imputes a serious criminal offense or involves one's moral turpitude. The statements here, even if they could *344 ultimately result in criminal prosecution, do not rise to that level. Rather, they involve only technical violations of land use regulations. See, e.g., Prosser and Keeton, The Law of Torts, § 112 Defamation (5th ed. 1984) ("With the extension of criminal punishment to many minor offenses, it was obviously necessary to make some distinction as to the character of the crime, since a charge of a traffic violation, for example, would not exclude a person from society, and today would do little, if any, harm to his [or her] reputation at all."); see also Elder, Defamation: A Lawyer's Guide, § 1:16 Slanderous Imputation of a Crime (July 2018 Update) ("[T]he courts have reached an explicit consensus that a slanderous imputation of crime is actionable per se only if it 'involves a major social disgrace.' ") see further, Smolla, 2 Law of Defamation, § 7:12 Four common-law slander per se categories-Imputation of criminal conduct-In general (May 2018 Update) ("Courts do, at times, enforce seriously that a crime be 'infamous' or 'serious' in order to qualify as defamation per se.").
Further, nothing suggests that providing a lessee a list of purported city ordinance violations in order to help the lessee open for business is defamatory or that Mr. Brown sent the list of purported violations with a malicious intent. In his affidavit, Mr. Brown explained that the e-mail was sent to provide Mr. Gladney information so he could bring the property that was leased by his store, Home Goods, into compliance with the city's municipal code. Although it was later determined that the violations had been grandfathered in because there had been no major change to the use of the building, Mr. Brown attested that at the time he sent the e-mail, he had no reason to believe that any of the potential code violations listed were grandfathered in and did not have to be brought into compliance. Also, the evidence offered in support of summary judgment reflects that Mr. Gladney's store applied for and received a building permit and a certificate of occupancy from the City of Mandeville. Finally, despite the e-mail, Mr. Gladney leased the property at issue from Mr. Markovich.
With regard to Diamond Properties' other new tenant, Ms. Kelly, Mr. Brown told her that Mr. Markovich had "some issues outstanding with him with other properties." Ms. Kelly also indicated that Mr. Brown stated that Mr. Markovich was not the "kind of person" someone would want to rent from.
Even assuming that the statements, when taken together, are defamatory, Mr. Markovich has failed to come forward with evidence to show that he can meet his burden of proof at trial as to the fourth element of a defamation claim-i.e. , that the statements made to Ms. Kelley injured him. Despite Mr. Brown's statements, the record establishes that Ms. Kelly subsequently opened her business, Accurate Auto & Tire, and continued leasing the property from Mr. Markovich for the two-year term of the lease and then on a month-to-month basis thereafter.
We recognize that the injury resulting from a defamatory statement may include nonpecuniary or general damages such as injury to reputation, personal humiliation, embarrassment and mental anguish even when no special damage such as loss of income is claimed. Costello, 864 So.2d at 141. Regardless of the type of injury asserted, however, a plaintiff must present competent evidence of the injuries suffered and must also demonstrate that the defamatory statements were a substantial factor in causing the harm. Id. Plaintiffs have failed to present any evidence to show that they will be able to meet their burden of proof at trial that *345 they suffered any type of injury from these statements.[4] Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Mr. Brown on the defamation claims. Plaintiffs' second assignment of error is without merit.
TORTIOUS INTERFERENCE WITH BUSINESS
Louisiana courts have recognized a cause of action for tortious interference with business relations. See Bogues v. Louisiana Energy Consultants, Inc., 46,434 (La. App. 2d Cir. 8/10/11), 71 So.3d 1128, 1134. In Bogues , the court explained:
The cause of action for tortious interference with business derives from [La. Civ. Code] art. 2315. Tortious interference is based on the principle that the right to influence others not to enter into business relationships with others is not absolute. Louisiana law protects the businessman from "malicious and wanton interference," though it permits interferences designed to protect legitimate interests of the actor. A plaintiff bringing a claim for tortious interference with business must ultimately show "by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." Significantly, it is not enough to allege that a defendant's actions affected plaintiff's business interests; the plaintiff must allege that the defendant actually prevented the plaintiff from dealing with a third party. [Internal Citations Omitted.]
Id. at 1134-35.
On appeal, we note that plaintiffs have not shown that they will be able to meet their burden of proof at trial to show that Mr. Brown tortiously interfered with any business relationships. Specifically, as noted above, there is no evidence to indicate that any representations by Mr. Brown affected the business relationship between Mr. Markovich and Ms. Kelly or Mr. Markovich and Mr. Gladney. Accordingly, we find no error by the trial court granting the motion for summary judgment in favor of Mr. Brown with regard to plaintiffs' tortious interference with business claims. Plaintiffs' third assignment of error is without merit.
CONCLUSION
For the foregoing reasons, we reverse the July 11, 2017 trial court judgment insofar as it dismissed plaintiffs' claims for malicious prosecution. We affirm the portion of the trial court judgment which granted the defendants' motion for summary judgment regarding plaintiffs' defamation and tortious interference with contract claims. Costs of this appeal are to be divided between plaintiffs, Samuel Markovich and Diamond Properties Northshore, L.L.C. and defendants, Christopher Brown, and Donald Villere.
REVERSED IN PART AND AFFIRMED IN PART.
McClendon, J. dissents in part and assigns reasons
Theriot, J. dissents in part for the reasons assigned by J. McClendon.
McCLENDON, J., dissenting in part.
I disagree with the majority's conclusion that the trial court erred in granting *346 summary judgment on the malicious prosecution claim. Actions for malicious prosecution have never been favored, and, in order to sustain them, a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent. McClanahan v. McClanahan , 11-284 (La.App. 5 Cir. 12/28/11), 82 So.3d 530, 534, (citing Johnson v. Pearce, 313 So.2d 812, 816 (La. 1975) ). Plaintiffs failed to show that they would be able to meet this burden at trial.
As noted by the majority, although the city prosecutor initially nolle prossed the charges, he prosecuted Mr. Markovich for the charges after being supplied with the additional information he requested. In his affidavit, Mayor Villere confirmed that he "had no role in determining whether to go forward with the two citations issued to Markovich" and "[a]t no time was [he] consulted by the [c]ity prosecutor on whether to prosecute Markovich." Additionally, a magistrate ultimately convicted Mr. Markovich of two of the six charges, including one of the ordinance violations.
The record also establishes that Mr. Markovich failed to appear in court a number of times when summoned to address these purported violations. Neither Mr. Brown nor Mayor Villere were responsible for the arrest warrants issued due to Mr. Markovich's failure to appear. Additionally, Mr. Markovich does not assert that there was a lack of probable cause for the contempt charges.
I recognize that the district court held a new trial and Mr. Markovich was acquitted on all charges. Mr. Markovich asserts that this confirms a lack of probable cause for the charges. However, there is nothing in the record to indicate the basis of the district court's acquittal. Moreover, it is not sufficient on the part of the plaintiff to show that he was acquitted of the charge; he must prove that there was no reasonable ground for it. Grant v. Deuel, 3 Rob. 17, 20 (La. 1842). While the acquittal could arguably meet the third element of a malicious prosecution claim, i.e., the bona fide termination in favor of the plaintiff, plaintiffs have not shown that they can meet their burden of proof at trial to show that there was a lack of probable cause to institute the proceeding.
Considering the foregoing, I find no error in the trial court's conclusion that "[a]lthough plaintiffs have produced evidence that defendants were involved in the events leading to Mr. Markovich's arrest and prosecution, the evidence does not ... contradict ... that there was probable cause provoking Mr. Markovich's arrest and the institution of the proceedings in City Court." Accordingly, I dissent to the extent that majority concludes that genuine issues remain with regard to the malicious prosecution claim.

According to Mr. Brown, the City of Mandeville uses the tax rolls to verify property addresses and property owners for citations it might issue for code violations.

Mr. Brown hand-delivered the notice on October 24, 2011 to Michelle Kelly, who is one of Mr. Markovich's tenants and owner of Accurate Auto & Tire.

According to the defendants, on November 12, 2014, the City of Mandeville also filed a Motion for De Novo Appeal to the 22nd Judicial District Court, which was eventually denied.

We note that Mr. Markovich attested that he "suffered humiliation, embarrassment, and a loss of reputation" when he was arrested at the planning and zoning meeting in front of all the attendees. However, the arrest does not qualify as a defamatory action insofar as it is not a false and defamatory statement concerning another.