## No. 12,022.

### T. H. MOSLEY vs. C. S. YEARWOOD ET AL.

Probable cause means the existence of such facts and circumstances as would excite the belief, in a reasonable mind, that the plaintiff was guilty of the offence for which he was prosecuted.

Rumors are not, but the representations of others, and the conduct of the plaintiff inviting suspicion to himself, is a foundation for such belief.

In order to recover, plaintiff must show a total absence of probable cause, the presumption of which exists until the plaintiff can show the contrary.

APPEAL from the Second Judicial District Court for the Parish of Bienville. *Watkins, J.*

---

*L. K. Watkins* for Plaintiff, Appellant:

Defendants can not justify their acts by a mere belief in the guilt of the accused; simply belief in his guilt will not shield them. If they act on information received they take the risk of the truthfulness of the information on themselves. 33 An. 392; 36 An. 378, 103; 41 An. 303, 51; 47 An., p. 254; 15 An. 492, 166, and Amer. and Eng. Ency. of Law, Vol. 13, pp. 402, 303; Vol. 14, pp. 26, 75.

Acting on the advice of counsel can not protect the defendant in every case, and how far this protection is a shield, see 47 An. 254; 33 An. 392; 47 An. p. 36, and the advice of a justice of the peace is no shield at all. Amer. and Eng. Ency. of Law, Vol. 14, p. 57. The advice given must be by a licensed attorney learned in the law.

Bad character, where proved, is only in mitigation of damages and does not go to the defeat of the action entirely. 46 An. 36.

---

*J. F. Pierson* for Defendants, Appellees:

The libel, slander and defamation charged in plaintiff's petition, is manifestly merged in the cause of action for malicious prosecucution, and if it is not actionable, neither is the alleged slander or libel. 40 An. 274; 44 An. 978.

It is not only the lawful right but the civil duty of every citizen to set on foot criminal proceedings whenever he believes honestly and on reasonable grounds that a crime has been committed. 40 An. 375; 44 An. 936; 41 An. 513; 46 An. 1464; 47 An. 34.

The social interests require, and the law invites him, to aid the State in the discovery and punishment of crime, and it would be equally unjust and impolitic to make him guarantor for the success of the prosecution, or to make its failure an actionable wrong. The law holds him harmless unless his conduct be tainted with "malicious motive and want of probable cause.' 40 An. 375; 44 An. 938; 41 An. 513; 15 An. 422.

---

Argued and submitted January 23, 1896.
Opinion handed down February 10, 1896.
Rehearing refused February 24, 1896.

---

The opinion of the court was delivered by

McEnery, J. This is a suit by plaintiff against defendants for malicious prosecution, to recover the sum of seventy-five hundred dollars as damages. The petition charges slander, libel, defamation, false imprisonment, all ending in the final accusation of malicious prosecution.

The defendants answered with a general denial, and specially pleaded that they honestly believed, and had good reason to believe, that the accusation was true; and that their prosecution of the defendant was a *bona fide* proceeding, without malice, in order to bring to justice the perpetrator of a crime. There was judgment for the defendants, from which plaintiff appealed. The record is voluminous, but the facts necessary for the determination of the case are few and not complicated.

This suit originated in the contest in Ward 4, Bienville parish, over the question submitted to the voters of the ward for or against license for the sale of intoxicating liquors. As is the usual result of such a question being submitted to the people, there was great excitement, heated discussion, and angry feelings engendered. We learn from plaintiff's brief that he "was a leader on the whiskey side, and made denunciatory speeches in the campaign, denouncing the prohibitionists publicly and privately, for trying to intimidate the negroes." This statement is made to show that the defendants, some of whom were denounced by plaintiff, were on the investigating committee hereafter alluded to, and for this reason the plaintiff had excited their hostility. There is no doubt but that the rancorous feelings on both sides was about of equal intensity.

The election was held on Saturday, the 14th day of October, 1893. On the Sunday previous to the day of election, the plaintiff, in company with one James McElroy, went from the town of Ringgold to Arcadia, the parish site, for the poll book.

They returned with it on Tuesday night about dusk. The poll book was thrown on the gallery store of McElroy. It remained there until it was sent for by a gathering of license men at the store of Page & Davis. The book was canvassed to see how the vote would result. There were then no changes in the book. The plaintiff was present in the store during the canvass of the vote. J. J. Davis took charge of the book and kept it locked in a desk until one T. R. Giddens, about sunup, came and took it away. This was on Wednesday. On late Wednesday evening it was ascertained that the book had been tampered with, a number of names erased and others substituted who were in favor of license. Great indignation followed this disclosure, and it seems that both parties condemned this illegal and unwarranted act. A committee of investigation was appointed at a called meeting of indignant voters. The evidence does not show

that the committee acted hastily. It sent two citizens of Arcadia with a list of the erasures and alterations, in order to get a correct list. The alterations in the poll book were made during the time it was taken from Page & Davis' store by Giddens, until it was returned. It was found that the erasures were made in two different handwritings. One of the committee who was familiar with plaintiff's handwriting said he believed one of the handwritings was that of Mosley, the plaintiff. In the course of their inquiries the committee could not get satisfactory evidence of the whereabouts of Giddens and the plaintiff. The plaintiff, in his testimony and in that of his father, attempted to prove that he was, during the time that the changes were made in the book, sick at his father's house. On that point the evidence is unsatisfactory, and does not so locate the plaintiff that it was not probable that he could have participated in the changes and alterations of the book. Suspicion thus being directed against the plaintiff and Giddens, the committee went to one Livingstone, who they had reasons to believe knew something about the alterations. They mentioned their suspicions as to the plaintiff and Giddens, and were told by the man Livingstone that they were "on the right track," but he refused to mention names until he was called upon to testify in a judicial proceeding. On the day of the election, Giddens and Mosley, the plaintiff, were together in soliciting votes, and the evidence is convincing that the plaintiff approached men whose names were not regularly and legally registered, but whose names were on the altered poll list and soliciting them to vote, in many instances telling them that they were registered. At the close of the polls, or toward the nearing of the close of the polls, the committee talked over what each had learned and observed, and the result was that an affidavit was made against the plaintiff by the defendants, upon which a warrant issued. He was arrested. On the preliminary examination before the District Judge he was discharged, and the grand jury afterward ignored the charge.

We have carefully examined the testimony for the plaintiff, and had the defendants offered no evidence, we do not think the plaintiff would be entitled to a verdict. His own testimony throughout is unsatisfactory and ambiguous, and there are guarded expressions, showing that he was not as candid and open as a man ought to be, who knowing himself to be innocent, seeks to be vindicated.

Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind that the plaintiff was guilty of the offence for which he was prosecuted. Rumors are not, but the representation of others is, foundation for such belief. And we may add that when to the representations of others, the plaintiff has by his own conduct invited suspicion to himself, the defence is complete. Plassan vs. Lottery Co., 34 An. 246; Decoux vs. Lieux, 33 An. 392; Blass vs. Gregor, 15 An. 421; Laville vs. Biguenaud, 15 An. 605; Murphy vs. Redler, 16 An. 3; Robertson vs. Sprig, 16 An. 252; Dickinson vs. Maynard, 20 An. 66; Godfrey vs. Soniat, 33 An. 915; Coleman vs. Ins. Co., 36 An. 92; Dearmond vs. St. Amant, 40 An. 374; Brelet vs. Mullen, 44 An. 194; 37 Md. 282; 48 Barb. 30; 52 Penn. 419.

The law presumes that probable cause existed until the party aggrieved can show the contrary, hence he is bound to show the total absence of probable cause. *Id.;* 1 Camp. 199; 35 Md. 194; 1 Wend. 140; 7 Conn. 281; 12 Conn. 219; 3 Coll. 246; 3 Mass. 112.

The plaintiff has failed to show the absence of probable cause, and we think the testimony of defendants shows that they acted upon reasonable grounds of belief, based on the fact that a crime had been committed, on representations made to them by others as to plaintiff's connection with it, and his own conduct inviting suspicion to himself.

Judgment affirmed.