(42 South. 216.)

No. 16,216.

MORGAN v. ILLINOIS CENT. R. CO.

(Oct. 29, 1906.)

1. MALICIOUS PROSECUTION—DAMAGES.
Plaintiff's suit is directed against the defendant corporation for damages. Malicious prosecution is his charge against the defendant.

2. SAME—WANT OF MALICE.
Without malice and without gross negligence, the prosecution complained of by plaintiff was instituted by the state.

3. SAME—PROBABLE CAUSE—CONFESSIONS.
There had been confessions made by persons accused, implicating plaintiff. Some of the goods were found in the possession of the accused. The confessions implicated plaintiff and justified the defendant in bringing the matter to the attention of the authorities and in assisting in prosecuting the offenders.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, §§ 28–31, 33.]

4. SAME—ABANDONMENT OF PROSECUTION NOT GROUND SUFFICIENT.
The prosecution against plaintiff was abandoned. Defendant did not, because of the abandonment, become liable in damages as there was probable cause.
[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Malicious Prosecution, §§ 49, 51.]

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

Action by Thomas Morgan against the Illinois Central Railroad Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Edward Alexander Parsons and Louis Randolph Hoover, for appellant. Gustave Lemle and Hunter Collins Leake (J. M. Dickinson, of counsel), for appellee.

BREAUX, C. J. This action was brought by plaintiff for $50,000 damages against the defendant company, on the ground that the company instigated and caused his arrest maliciously and without cause.

Plaintiff sets forth in his petition that he was humiliated and that he greatly suffered; that the arrest and the asserted cause were made public through the daily newspapers.

He also complains of the refusal of the defendant to own its mistake; that the reparation he requested would, in some degree, at any rate, have blotted out the stain which reflects upon his good name; that he has been unable to obtain employment, and, in consequence, he and his family were made to suffer by the arrest and unfounded charges.

The defense of the defendant company is that other workmen in its employ made a confession, implicating themselves and plaintiff as well as parties to the theft charged. The further ground of defense is urged that an affidavit was made against the plaintiff by two detectives, Stubbs and Feehan, of the city police force, and that this affidavit was not made at its request.

Having stated the grounds upon which plaintiff brought the suit, and upon which the defendant defends, we are next led to consider the facts of the case.

It appears that the plaintiff had been in the service of the defendant company as night watchman for about six years. On the night of July 22, 1905, he was arrested without warrant, and at the same time others of the accused were arrested in one of its yards on the same charge.

Plaintiff's contention at this point is that he was arrested by two agents of the defendant company. The defendant's evidence shows that the arrest was made by the officers of the police force.

In support of plaintiff's contention, plaintiff and the accused, Bartel, who was arrested at the same time, testified. On the other hand detective Stubbs of the city police force testified that they had not been

arrested by the defendant's agents, but that he (Stubbs of the police force), placed plaintiff under arrest; that two of the railroad employés pointed out the plaintiff to him, and that he arrested him.

The crime which plaintiff and others named were charged with having committed consisted in breaking into defendant's freight cars, opening boxes therein containing goods, and carrying them away.

It seems that the company's officers had for some time suspected that goods were stolen from their cars whilst in its yards under guard of its watchmen in this city.

A number of times defendant had been called upon by shippers on their trains for goods not delivered. The goods had disappeared, although nothing showed that the cars had been broken into.

It was strongly suspected that the stealing was done by workmen of the company. Steps were taken to stop the perpetrators of the crime. The goods appropriated amounted to quite a number of thousand of dollars —eight or nine.

It seems that it was by the merest chance that the company's agent, detailed to find the guilty parties, overheard two persons of the opposite sex talking about articles of merchandise which they evidently did not know had been stolen. This was an unintentional intimation which led to the recovery of some of the goods.

This incident, as published at the time, is referred to in passing.

Those in whose possession the goods were found made a confession. In two of the confessions, plaintiff was, in terms, implicated. A few days later one of the accused recanted his confession and recalled all that which he had set forth in his affidavit against the plaintiff. Another of the accused (Heaton), also made a confession. He did not refer to plaintiff, but he stated the particulars of the crime.

117 LA.—22

These confessions were brought to the attention of the attorney of the defendant company. He directed the employés of the company, by whom these written confessions were brought to him, to take them to the office of the inspector of police for his examination and action.

The inspector of police, after he had been spoken to, ordered the arrest of the parties implicated in the written confessions. At his instance the two employés of the defendant company who brought in the papers to him accompanied the police officers to point out the accused; together they repaired to the defendant's yards, and the police officers arrested plaintiff, as before stated.

After the arrest plaintiff was brought to the police station. The name of the accused was inscribed on the police book. He was then released on parol, and subsequently he furnished bond required.

In the course of a short time thereafter, detectives Stubbs and Feehan made an affidavit against plaintiff before the first city court of the city of New Orleans, which affidavit, detective Stubbs testified, was made at the instance of the trainmaster of the defendant company.

At another time he testified that he made the affidavit from information received and because of the confessions made by some of the accused.

The defendant company employed a special attorney who took charge of the prosecution before the city court, altered the affidavit, and made such changes as he deemed proper.

When the case was called for trial, the special attorney asked for a continuance; objection to the continuance was interposed by plaintiff's counsel. The court having ordered the trial to be proceeded with, the special attorney then stated that the Illinois Central Railroad Company had nothing against the plaintiff, and that he would con-

sent to a nolle prosequi of the case. The case was abandoned.

Summers, one of the accused who implicated plaintiff, confessed on July 10, 1905.

This confession was reduced to writing by one of the railroad employés, and signed by Summers and placed in the hands of the inspector of police by two of the employés of the defendant.

On the 12th of July, plaintiff and the other persons implicated called upon Summers, and with him repaired to a notary's office, and there Summers declared that he had been induced to make the confession in question; that the confession was not true.

On July 23, 1903, Stevens, another of the accused, signed a lengthy confession in which he implicated plaintiff and said among other things, quoting:

"I have on a number of occasions talked with Bartels, T. Morgan, Feahney, and Butts, who were all employed as watchmen, about the stealing which was going on, and we had no fear whatever of them making any report of it, nor would we stop if they came upon us while we were committing robberies. They were fully aware of what was going on. This I am positive of from the conversations I have heard them have on the subject."

The testimony shows that plaintiff was watchman at shed 7. There was stealing in that shed; in fact there had been systematic stealing from different cars in defendant's yards.

Heaton, another of the accused who confessed, did not implicate plaintiff, but he stated that there was stealing done on the levee where we understand the plaintiff some time stood watch.

Lehon, who seems to have followed up the case closely for defendant from the first, testified that Stevens confessed orally on the 22d of July, the day of the arrest, implicating Morgan, the plaintiff. Stevens said that he and others, plaintiff among them, drank liquors which they knew had been stolen.

It will be seen by Lehon's testimony that Stevens had confessed at the time that the matter was brought to the attention of the inspector of police; that he, Stevens, made two confessions. The first confession was laid before the police officer.

The district judge arrived at the conclusion that the active steps taken by the police officers to bring the parties to justice were the action of the state; in other words, that the prosecution was initiated by the state, acting through her officers with the active assistance of the defendant; and alternatively the court decided if the arrest and prosecution were made by the defendant it had not acted without probable cause, and plaintiff's action was dismissed.

We pass from a statement of the facts to a consideration of the issues, and to the law applying to the case.

The defendant was not maliciously active; freight had unaccountably disappeared; some of the goods were found in the possession of persons who afterward confessed to the crime, and implicated the plaintiff.

It was entirely proper to appear before the police officers and submit the evidence. Afterward the police officers acted and placed the accused under arrest.

The officers of the defendant company could not very well have remained quiet and indifferent; the confessions were direct. Although one of the parties recalled his confession, there still remained two confessions; one especially damaging and serious, sufficiently so as to render a judicial inquiry necessary.

The special attorney (special counsel of defendant company) employed to prosecute plaintiff and others abandoned the prosecution against the plaintiff.

It cannot be correctly charged that defendant pressed the prosecution too far.

Plaintiff may have had good cause to complain, but not against defendant. It was his misfortune that his fellow employés, who met him, talked to him, chose to implicate him. If they stated falsely, they are to

blame. The defendant's officers did not act without probable cause. Every person owes it to himself and to the state, if he believes that a public wrong had been committed, to bring it to the attention of the authorities. If it should happen that a charge he makes to all appearances is well founded and worthy of belief, and it is afterward made to appear that it was not, he should not be mulcted in damages.

On this point let us assume for illustration that a natural person, instead of a large corporation, is repeatedly called upon to pay for missing property intrusted to him which he had placed in the charge of a watchman. He institutes search and finds, through the overheard talk of two persons of the opposite sex, entirely innocent about the theft, a clew which leads to the discovery.

Part of the goods are found. The one in possession makes a confession implicating others. The confession is brought to the attention of the authorities. One of the persons implicated is arrested, and an affidavit is made against him. Two weeks afterward the case is called for trial. The prosecution is abandoned, for the reason that it does not appear after thorough examination that the confession is sustained by the facts of the case, although, at first the victim of the theft had very good reason to believe in the truth of the confession.

The case of this person thus stated for illustration is about the case as relates to the defendant.

The prosecution was "not malicious, nor without probable cause. It was proper to bring the matter before the authorities." That was the view expressed in Dearmond v. St. Amant, 40 La. Ann. 375, 4 South. 72.

There had been systematic stealing of defendant's freight for some time. Whether a natural person be concerned or a corporation, it naturally prompts to active measures in order to put an end to the wrong.

Assistance to the state in seeking to bring about the punishment of crime whenever a person believes honestly that a crime has been committed is not actionable, "although it may afterward be found that the person is not guilty." Id.

The court said in Sibley v. Lay, 44 La. Ann. 939, 11 South. 582: "We are convinced that the defendant acted without malice and from an honest belief, based upon reasonable grounds," and rejected plaintiff's demand—citing Vinas v. Insurance Co., 33 La. Ann. 1266.

The particular subject received consideration again in Girot v. Graham, 41 La. Ann. 511, 6 South. 815. The court gave effect to the "good faith of the person who had brought the charge."

"Good faith and a total absence of all malice" were considered a good defense in Womack v. Fudikar, 47 La. Ann. 33, 16 South. 645.

Plaintiff cites two decisions, evidently with confidence that they sustain his contention.

In the first-cited case the person held liable, it was stated, "acted unwarrantably and hastily." The arrest was a hasty and unwarranted act, creating the one inference that it was a malicious act. In other words, it was improper and unjust. Hardy v. Stevenson, 29 La. Ann. 172.

In the second case cited, the evidence showed that there was want of probable cause. This was not at all the case in the pending suit. Mortimer v. Thomas, 23 La. Ann. 165.

Here there was reasonable ground for believing that a felony had been committed.

The plaintiff, as another ground of action, urges that he was arrested without a warrant.

As we think the officers of the law were responsible for the arrest, we will not dwell upon that fact, for the conclusion just expressed dispenses with that ground of complaint. It goes without saying that the de-

fendant cannot be held liable for damages if the officers failed to procure a sufficient warrant.

We might review the other decisions cited by learned counsel for plaintiff. The conclusion arrived at in each of the cited decisions is from the premise that a wrongful act had been committed in arresting the complaining party. We therefore will not pursue the subject further.

For reasons assigned, the judgment appealed from is affirmed.