(127 So. 879)

## GRAHAM v. INTERSTATE ELECTRIC CO.

### No. 27196.

March 31, 1930.

Lemle, Moreno & Lemle, of New Orleans, for appellant.

Hugh M. Wilkinson, of New Orleans, for appellee.

LAND, J.

On September 27, 1922, F. B. Stern, vice president of defendant company, made an affidavit against plaintiff charging him, in his capacity as agent of said company, with the embezzlement of $2,192.49, in the parish of Orleans on June 28, 1922.

The case was tried before a jury in the criminal district court for the parish of Orleans, and plaintiff was acquitted of the charge on or about January 26, 1923.

Shortly thereafter, plaintiff instituted the present suit against defendant company for damages in the sum of $67,300, alleged to have resulted from the false accusation and malicious prosecution of plaintiff by defendant company.

The defense to the suit is that defendant company, in causing the arrest and prosecution of plaintiff, acted in good faith, without malice, and upon probable cause.

The present suit was tried by jury in the civil district court for the parish of Orleans and resulted in a verdict for $10,000 damages in favor of plaintiff.

From the judgment based upon this verdict, defendant company has appealed.

The affidavit was not made against plaintiff by defendant company until after all the documents and facts in the possession of the company had been submitted to its attorney, Gustave Lemle, and to Chandler Luzenberg, a leading criminal lawyer at the bar in the city of New Orleans.

Even after this precaution had been taken, approval of the prosecution on the charge of embezzlement was obtained from Robert H. Marr, district attorney of the parish of Orleans, upon a statement made to him by Chandler Luzenberg as to the contents of the various documents then in his possession.

It appears from the testimony of the attorneys employed by defendant company that each of them was of the opinion, from all the facts submitted to them by the company, that plaintiff was guilty of the crime of embezzlement, and that the facts placed in their possession by the company were the same as those brought out at the trial of plaintiff on the charge of embezzlement.

It is clear therefore that, in causing the arrest and prosecution of plaintiff, defendant

company was not actuated by malicious motive.

[2] The next question to be considered is: Did defendant company act upon probable cause? If so, then there is an end to the case, since in a suit for malicious prosecution the burden is on plaintiff to prove want of probable cause for prosecution against him, and malice upon part of the defendant. Both must concur. Womack v. Fudikar, 47 La. Ann. 33, 36, 16 So. 645; Mosley v. Yearwood, 48 La. Ann. 334, 19 So. 274; Carnes v. Atkins Bros. Co., 123 La. 26, 48 So. 572.

■ Probable cause does not depend upon the actual state of the case in point of fact, but on the honest and reasonable belief of the party prosecuting. Sandoz v. Veazie, 106 La. 202, 30 So. 767; Barton v. Kavanaugh, 12 La. Ann. 332–334.

■ An acquittal, or even subsequent proof of complete innocence, is not sufficient evidence of want of probable cause. Grant v. Deuel, 3 Rob. 17, 38 Am. Dec. 228; Morgan v. I. C. R. Co., 117 La. 671, 42 So. 216; Godfrey v. Soniat, 33 La. Ann. 915.

■ In April, 1922, plaintiff accompanied F. B. Stern, vice president of defendant company, to New York City for the purpose of advising him in the purchase of some radio apparatus.

Plaintiff's compensation for his services consisted of nothing but the expenses of the trip. Stern did not agree to pay plaintiff any commission whatever on the goods purchased.

While in New York City, plaintiff received from Stern, vice president of defendant company, $6,500 in cash, and later $4,000 in cash on the same day, April 15, 1922, for the purpose of paying for radio apparatus, which plaintiff represented to Stern he had purchased for his company from John Firth & Co. at certain prices, which had been made known to Stern by plaintiff but which, in fact, were much higher than the actual prices at which the goods were bought.

As shown by the statement of John Firth & Co., found at page 27 of the transcript, plaintiff paid to that company on April 15th the whole of the $6,500, but only $1,800.25 of the $4,000 which he had received from Stern, vice president of defendant company. In other words, plaintiff paid to John Firth & Co. on April 15th only $8,300.25 of the $10,500 received in cash by him.

This statement shows that all of the merchandise purchased by plaintiff from John Firth & Co. amounted to $7,232.81, and that all of the credits allowed amounted to $9,425.30, leaving a balance of $2,192.49.

In a letter of date December 26, 1922, written by John Firth to plaintiff, it is expressly stated by Firth to plaintiff himself that he made no request for a commission on the order given.

It is also stated in the same letter to plaintiff from John Firth: "Further a check was sent you for over $2,000, which was, I believe, the difference between the amount of goods shipped you and the actual amount of money paid over to John Firth & Company by yourself."

This statement and these letters were received in evidence without objection, and must be duly considered by the court.

■ It is clear, therefore, that the balance of $2,192.49, which plaintiff is charged with having embezzled, constituted funds justly belonging to defendant company.

Not one dollar of this balance is shown to be composed of commission, discount, or rebate, either by the statement of John Firth

& Co. or by the testimony of Stern, vice president of defendant company.

In the letter of John Firth to plaintiff, of date December 26, 1922, plaintiff is given the following advice: "My advice to you is to turn over the money to him (Mr. Stern) you received from us and the difference between the $10,650 ($10,500) that he handed to you, and the money that you paid to us, and save yourself any further trouble."

On June 13, 1922, plaintiff wired John Firth & Co. requesting that any difference be forwarded to him by telegram.

On the same day, John Firth & Co. mailed to plaintiff a check for $2,192.49 to balance plaintiff's account.

Demand was made upon plaintiff by defendant company for the $2,192.49 remitted to him by John Firth & Co. The attorney for plaintiff called on the attorneys for defendant and stated that he was prepared to pay between $700 and $800 in full settlement. This proposition was declined and the prosecution of plaintiff for embezzlement followed.

It is stated in plaintiff's brief that: "The amount alleged to have been embezzled by him was an extra commission given him by Firth, as a personal matter between them, and not any money belonging to defendant or received by Graham for its account, and Graham could not embezzle his own money."

 We are not concerned in the present case with the merits of plaintiff's acquittal. It is not our province to determine here whether plaintiff was guilty or the specific charge made against him. But it is our duty to look into all of the circumstances of the case, since the plaintiff seeks to recover damages, and to determine whether there was such seemingly unlawful conduct on the part of plaintiff as to justify defendant company in causing his arrest and prosecution.

Our conclusion is that defendant company acted without malice and upon probable cause, and, for these reasons, it is not liable in damages to plaintiff.

It is therefore ordered that the judgment appealed from be annulled and reversed.

It is now ordered that plaintiff's demand be rejected and that plaintiff's suit be dismissed at his costs.