280 So.2d 225 (1968)
Joseph H. MOTICHEK
v.
CLOVIS-HENDRY, INC., et al.
No. 7502.
Court of Appeal of Louisiana. First Circuit.
December 16, 1968.
Rehearing Denied June 29, 1973.
Writ Refused September 21, 1973.
J. D. DeBlieux, of DeBlieux & Guidry, Baton Rouge, for appellants.
Arthur Cobb, Baton Rouge, for appellee.
Before LANDRY, REID and SARTAIN, JJ.
REID, Judge.
Plaintiff Joseph H. Motichek filed suit against Lundin-Hendry Incorporated, Benny *226 Spence and Hartford Accident & Indemnity Company seeking the sum of $45,050.00 with legal interest from judicial demand until paid for damages for libel, slander and defamation as a result of plaintiff being arrested on a charge of theft on an affidavit signed by Benny Spence, an employee of Lundin-Hendry, Incorporated and upon instructions of Clovis Hendry, the head of the organization. Lundin-Hendry, Incorporated is now known as Clovis-Hendry, Incorporated. Plaintiff further alleges the charge was filed maliciously and without probable cause.
The defendants, Benny Spence and Lundin-Hendry, Incorporated filed an answer, which was in the nature of a general denial.
The suit was originally filed in the Twenty-third Judicial District Court of Louisiana, Parish of Ascension. Subsequenty and by agreement between counsel for both parties, this suit was transferred to the Nineteenth Judicial District Court. It was tried before a jury, which returned a verdict in favor of the plaintiff in the amount of $2000.00. Judgment was signed for this amount and the defendants have brought this appeal.
The appellants have specified the following three errors as the basis for their appeal, to-wit:

1.
The verdict was contrary to the law and the evidence.
"To instruct the jury on false arrest and imprisonment, and to instruct the jury according to plaintiff's special charges pertaining to a cause of action based solely on defamation, was error most especially prejudicial to defendants. Tr. 283-290.
To permit the introduction of testimony by numerous witnesses, as to plaintiff's character and reputation in his community, was error prejudicial to defendants. Tr. 96-98, 110, 122-123, 125-126, 129, 133."
There is very little dispute about the facts in this case. On the morning of April 10, 1958 an employee of the defendant, Clovis-Hendry, Incorporated, namely, Pirie O'Neal discovered plaintiff Motichek carrying a roll of defendant's "Glasfab", water proofing material away from one of defendant's stock piles. Motichek claims that he moved the glasfab in order to get it out of the way of a "cherry picker" a machine which was operating on this job at the same time. He moved the glasfab about 75 feet away from the stock pile and placed it on, in or by a gang box used for storing the tools of the plaintiff and other iron workers on the job.
Motichek was seen by Mr. Pirie S. O'Neal, an employee of Clovis-Hendry who moving the glasfab and his testimony is as follows, to wit:
"Q. Mr. O'Neal, you have seen that drawing before, haven't you?
A. Yes sir.
Q. Would you tell the Jury where you first saw Mr. Motichek with the roll of fab that you stated you saw him with?
A. Just about half way between where the truck was and the tool box, right in here.
MR. DEBLIEUX: For the information of the recorder the witness pointed to a place halfway between the box marked "gang box" and the drawing marked "our truck" on the dotted line marked "foot path."
Q. Did you take the fab off of the truck?
A. Yes sir.
Q. Where did you put it, Mr. O'Neal?
A. Right here on this stockpile.

*227 Q. Now what did you have there in what you call the stockpile?
A. Fiber glass, water, kerosene, rags and mastic cement.
Q. How many rolls did you take off the truck, do you recall?
A. Two.
Q. What did you do with them?
A. I put one there and took the other one to the pit.
Q. After you took the one to the pit what did you do?
A. I went part of the way down in the pit and when I came out that's when I seen the man going across here with a roll on his shoulder towards the box.
Q. What did you do then?
A. I went down in the pit to say something to the men down in there, and when I came out Mr. Spence was there and I told him.
Q. Did you tell Mr. Spence what you had seen?
A. Yes sir.
Q. Did you see anyone else moving any material, or anything of that sort around there?
A. No, sir.
Q. Did you see anyone else down around, other than your men, around where your stockpile of stuff was?
A. No, sir."
Mr. Pirie also testified as follows concerning the location of the truck:
"Q. Mr. O'Neal, would you point out specifically to the Court where the truck was located?
A. Right here. Beside this road.
Q. I want to ask you specifically now, in going from your stockpile to the gang box, could you go in a straight line?
A. No, sir.
Q. Why?
A. The back of the truck was sitting right over the path.
Q. Who parked that truck there?
A. I did."
Mr. Benny Spence, the defendant's foreman, testified concerning a sketch and particularly in reference to the tank and foundation.
"Q. Would you explain to the Jury loud enough to where they can hear you, what this is, what it represents, and where each one of the parties were working?
A. Well, there is a tankyou see the round part there, on a concrete foundation, right directly behind it you will see a pit, and you see a slope leading into that pit. We were working in there. Right directly behind that you will see a steel constructiondrew out there, it's not anything what it looked like
Q. All right, suppose you come, Mr. Spence, and point out the various items on here."
You will see from this testimony that the plaintiff working with the defendant's laborers all around him, in close proximity to him, had to pass defendant's truck to get to the gang box where he placed the glasfab and there was a concrete foundation supporting a tank on which he could have placed the glasfab without having to walk that distance and put it down near the gang box. These facts would arouse suspicion in anyone's mind that a theft was about to be perpetuated, especially in view of the numerous losses the defendant had *228 had in connection with the operations at this place.
Some time later O'Neal reported this incident to his immediate boss, Benny Spence. Spence contacted his employer, Clovis-Hendry and on his instructions swore out the affidavits which resulted in Motichek's arrest.
Motichek was arrested by Deputy Sheriff Lester Gonzales of Ascension Parish on the theft charge. At the time of his arrest he maintained his innocence and asked that the Deputy Sheriff accompany him to his home and search the place for any stolen property. This was done and the Deputy Sheriff testified that there was no stolen property there.
Plaintiff Motichek was an iron worker employed by F. H. McGraw Company, who was doing work on the building of the Ormet plant adjacent to the Mississippi River south of Baton Rouge. Clovis Hendry, Incorporated was likewise a subcontractor on this job and the employees of both companies were working in very close proximity to each other.
It is testified to and undisputed that some $2000.00 of material, belonging to the plaintiff, had been stolen or disappeared on this project before the date of the incident, which happened on April 10, 1958.
We think that the main issue here is whether the defendant and the employer acted without malice and with probable cause. As we stated there had been several thefts of defendant's property and when this man was discovered moving some of the property to a gang box, which was used by the ironworkers of the Company for the storage of their tools and equipment, Mr. Spence and Mr. Hendry, in our opinion, had probable cause suspecting this was a theft such as had been going on since the job started.
As far as good faith was concerned neither of the parties seemed to have known each other, and there will be no question of malice actually involved.
There is no question but what Mr. Motichek enjoyed a good reputation and that when the facts were finally brought out it is equally apparent that he did not intend to steal the glasfab. However, it is not the question whether Mr. Motichek stole the glasfab or intended to steal it up to the time of his arrest but the question of whether the charge was filed without malice and in good faith.
We have examined the law applicable to this case beginning with the case of Dearmond v. St. Amant, 40 La.Ann. 374, 4 So. page 72, which holds as follows:
"This is an action for defamation of character and malicious prosecution. The defamation of character alleged consists in merely making public statements that plaintiff was guilty of the crime for which he was arrested and prosecuted upon the affidavit of defendant. Manifestly the slander is merged in the prosecution, and, if the prosecution is not actionable, neither is the slander.
* * * * * *
If plaintiff is innocent of this heinous charge, as the law presumes him to be, he has undoubtedly suffered a great wrong; and for him to be compelled to bear it without redress is indeed a hardship, but it is one of those sacrifices which the individual is required to make to the interests of society. It is not only the lawful right, but the civil duty, of every citizen to set on foot criminal proceedings whenever he believes honestly and on reasonable grounds that a crime has been committed. The social interests require, and the law invites, him thus to aid the state in the discovery and punishment of crime; and it would be equally unjust and impolitic to make him a guarantor of the success of the prosecution, or to make its failure an actionable wrong. Hence the law wisely holds the prosecutor harmless in such a case, notwithstanding the acquittal of the person accused, unless his conduct has been tainted by two concurrent vices: (1) Malicious motive; (2) want of probable *229 cause, i. e., absence of reasonable grounds for believing the truth of the charge made. (Emphasis supplied)"
The syllabus by the Court in Dearmond v. St. Amant, supra, stated "in this action for malicious prosecution, the evidence fails to establish the facts that the defendant acted with malice and without probable cause which are essential to support such a suit."
This case was followed in Sibley v. Lay, 44 La.Ann. 936, 11 So. 581. In the case of Enders v. Boisseau, 52 La.Ann. 1020, 27 So. 546 our Supreme Court dealt with malicious prosecution cases with defamation of character merged in with it.
In this case the Court in its syllabus held as follows:
"If affiant makes oath against a party charging him with the commission of a crime for which he is thereunder arrested, he will not be mulcted in damages, notwithstanding his subsequent discharge, if there was probable cause for the charge being preferred." The Court further held as follows:
"In our conception, this is an action for the damages that are alleged to have resulted from a malicious prosecution, pure and simple, notwithstanding the dual character of the plaintiff's demand as set forth in his petition, because the alleged slanderous and libelous averments made in the affidavit of the defendant resulted in the arrest of the former under a warrant immediately afterwards, and thus constituted one continuous transaction."
Again following Dearmond v. St. Amant, Louisiana Supreme Court in the recent case of Acme Stores, Inc. v. Better Business Bureau, 225 La. 824, 74 So.2d 43 held that an action on libelous statements made in a situation comprising malicious prosecution was proper only where the charges because of malice and want of proper cause. We quote from this case as follows:
"In the present case the action is one for libel and slander and whereas the allegations relating to the affidavit filed against the plaintiff are, properly speaking, allegations forming a cause of action for malicious prosecution, it isn't necessary, in order to support the petition, to make a distinction between those two actions. The suit is essentially one for damages caused by an alleged "fault" on the part of the defendants and under the terms of Article 2315 of the LSA-Civil Code, they are obliged to repair the damage upon due proof of their alleged act and the damage occasioned thereby."
Probable cause in connection with malicious prosecution has been defined by Louisiana Supreme Court in the case of Sandoz v. Veazie, 106 La. 202, 204; 30 So. 767, 773, in the following language to-wit:
"Probable cause means the existence of such facts and circumstances as would excite the belief in a reasonable mind that the plaintiff was guilty of the offense for which he was prosecuted. Rumors are not, but the representations of others are, foundation for such belief. And we may add that when, to the representations of others, the plaintiff has, by his own conduct invited suspicion to himself, the defense is complete. Mosley v. Yearwood, 48 La.Ann. 334, 338, 19 South 274. This court quoting from Greenleaf, has also said: `Probable cause does not depend upon the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting.' Barton v. Kavanaugh, 12 La.Ann. [332], 334. (Emphasis supplied)."
We feel the case of Eumont v. Railway Express Agency, 213 La. 1040, 36 So.2d 30, is in point with this case. This case holds in effect that even though the man is innocent of the charge and has been tried and found not guilty before a jury and subsequently filed suit for damage for malicious prosecution, a recovery was not allowed because the party prosecuting had an honest and reasonable belief or cause *230 to make the charge. We quote from this case as follows:
"After a perusal of the evidence, we have no hesitancy in concluding that plaintiff has utterly failed to make out a case of malicious prosecution and that the District Judge did not err in dismissing his suit. The jurisprudence in these cases is firmly established and it has been many times stated and reiterated that an action for malicious prosecution will not lie unless there is a concurrence of the presence of malice and the absence of probable cause. In the recent case of Eusant v. Unity Industrial Life Ins. etc. Ass'n, 195 La. 347, 196 So. 554, 556, we said: `This court in the early case of Barton v. Kavanaugh, 12 La.Ann. 332 held that the plaintiff must not prove malice but must also show that there was no probable cause for the prosecution. Both must concur. This rule of law has never been deviated from, the latest expression to that effect being found in the case of Urbanek v. Moore, 179 La. 300, 154 So. 4. See also, Womack v. Fudikar, 47 La.Ann. 33, 16 So. 645; Mosley v. Yearwood, 48 La.Ann. 334, 19 So. 274; Lang v. DeLuca, 108 La. 304, 32 So. 329; Carnes v. Atkins Bros. Co., 123 La. 26, 48 So. 572; Graham v. Interstate Electric Co., 170 La. 392, 127 So. 879'.
"Probable cause does not depend upon the actual state of the case in point of fact, `but upon the honest and reasonable belief of the party prosecuting', Sandoz v. Veazie, 106 La. 202, 30 So. 767, 773, and the burden is on plaintiff to prove want of probable cause for the prosecution. Graham v. Interstate Electric Co., supra."
We, therefore, believe that Mr. Spence and Mr. Hendry acted in good faith, without malice and with probable cause in preferring the charge against plaintiff, even though the plaintiff was not guilty of anything. They had lost some $2000.00 worth of merchandise by theft and it stands to reason when someone is seen removing your property from the place where you left it to another place some seventy-five feet away to a gang box, you are justified in assuming that the action was a theft or an attempted theft of your property, and are justified in making a criminal charge causing the arrest of the party.
With regard to the other specifications of error, namely the instructions to the jury on false arrest and imprisonment and the introduction of testimony of certain witnesses to the plaintiff's character and reputation we feel that it is unnecessary to go into these. This matter is on appeal before us on both the law and the facts and we feel that nothing can be gained except loss of time and additional court expenses to remand this case to the Lower Court if we were to find that these instructions and ruling on the evidence was erroneous. We would eventually in the long run have to pass on the facts as well as the law.
Therefore, in conclusion we find that the verdict of the jury and the judgment signed in pursuance thereof are erroneous and are hereby reversed, and judgment is now rendered in favor of the defendant and against the plaintiff rejecting plaintiff's demand and dismissing this suit at his costs.
Reversed and rendered.
SARTAIN, Judge (dissenting).
I am compelled to dissent in this matter because my individual consideration of the record does not convince me that the decision of the jury and of the trial judge evidences manifest error which warrants a reversal as determined by the majority.
This is a suit for false arrest, humiliation, embarrassment, slander, etc. The law in such cases and particularly that of wrongful arrest is set forth in the main opinion and that law is clear to the effect that for a cause of action to arise from a wrongful arrest the person initiating the arrest must have acted without probable cause. The determination of what constitutes probable *231 cause in cases of this type is one of fact only.
The jury in this case was properly charged that the crux of plaintiff's case depended on whether or not defendant acted without probable cause. In determining this issue the jury saw the witnesses, heard their testimony and determined that Mr. Spence acted without probable cause.
Both plaintiff and defendants timely asked for a new trial. The trial judge denied both requests thus clearly indicating that he did not feel that the verdict of the jury was contrary to the law and the evidence. The trial judge also observed the witnesses and was in a position to determine whether or not the plaintiff had satisfactorily borne the burden of proving that defendants acted without probable cause. I do not find that the record supports the reversal of both the jury and the trier of fact on this issue.
I stress these considerations because probable cause in this instance rises or falls on the evaluation of and the weight to be accorded the testimony of each witness. This in itself bears a direct relation to the sincerity, truthfulness and demeanor of each witness. I differ with the majority because I am of the opinion that the written record in this instance is incapable of conveying these factors in their proper perspective for appellate review.
My consideration of the record leads me to the conclusion that the plaintiff is forced to bear without recourse the blunt of defendant's ire which admittedly was aggravated by the occurrence of other thefts. I personally find that the record supports the conclusion that the defendant Spence acted hastily and was indisposed to give any other consideration to the plaintiff notwithstanding pleas by plaintiff's superiors prior to the arrest.
The purported theft which defendants contend gave them probable cause for preferring charges occurred in broad daylight, on a large construction project, where many crafts were employed, when the plaintiff endeavored to move an item of material that belonged to the defendant. It is indisputable that the material needed moving. It was in the mud and other machinery was to be placed near its location. Plaintiff did not hide the material and his only sin in my opinion was moving it too far.
For these reasons I therefore dissent and feel that the judgment of the district court should be affirmed.
An Application for Rehearing.
SARTAIN, J., dissents from the refusal to grant a rehearing for reasons assigned in his original dissent.