371 So.2d 1186 (1979)
Clarence S. COLEMAN, Plaintiff-Appellee,
v.
The KROGER COMPANY, Defendant-Appellant.
No. 12564.
Court of Appeal of Louisiana, First Circuit.
April 16, 1979.
*1187 Ralph W. Brewer, Michael W. McKay, Baton Rouge, of counsel, for plaintiff-appellee Clarence S. Coleman.
A. S. Easterly, III, Baton Rouge, of counsel, for defendant-appellant The Kroger Co.
Before CHIASSON, EDWARDS and SARTAIN,[*] JJ.
SARTAIN, Judge.
Plaintiff-appellee Clarence S. Coleman brought suit against The Kroger Company (Kroger) for damages arising out of his arrest and prosecution alleged to be the result of accusations made by Kroger employees acting within the course and scope of their employment. The jury found in favor of plaintiff; Kroger appeals.
Coleman was arrested on August 22, 1975, around 3:00 o'clock p. m. for theft of property belonging to Kroger. The property involved was five or six shopping carts and several hundred metal kick plates designed to attach to the bottom of the shelves in a Kroger grocery store. Coleman was subsequently tried for theft and acquitted.
According to the witnesses for Kroger, the facts leading up to Coleman's arrest were as follows. Four Kroger employees, Roger McDaniels, Marshal L. Wheat, Charles Buckely, and Robert Everingham, all of whom testified at trial, were traveling in a car on Acadian Thruway in Baton Rouge, having just left the Kroger grocery store located in the shopping center at the corner of Acadian and Perkins Road. One of the employees spotted plaintiff's truck carrying several shopping carts, which he was able to identify as Kroger's from the blue plastic signs on the handles. The truck was coming from an alley behind the Kroger store. Wheat, the driver of the car, pulled off the road near a stop light and waited for plaintiff to approach. When plaintiff stopped at the light, Wheat went up to the truck, identified himself as a Kroger employee, and asked plaintiff to return the Kroger property that he was carrying. Plaintiff responded that he had found the carts in the alley or in the ditch behind the store.
When the light changed, plaintiff continued along Acadian for about a block until he was able to pull into a parking lot. The four Kroger employees followed plaintiff into the parking lot thinking he was going to turn around and return to the Kroger store. Instead, after a short delay, he proceeded to travel north on Acadian away from the store. Again the Kroger employees followed him, this time for several blocks. Plaintiff at no time travelled at an excessive speed or made other evasive maneuvers.
When plaintiff apparently realized that he was being followed by the driver that had spoken to him earlier, he pulled off the road. As McDaniels approached, plaintiff asked why he was being followed, and McDaniels answered that he was carrying Kroger property and they wanted it returned. At that, plaintiff replied that they could have it and began throwing the carts out of the truck into the street. According to Wheat, plaintiff explained his actions by saying he thought the items had been discarded as trash. McDaniels went into a nearby office and called the police. A short time later a passing police car was flagged down. The police officer was told that plaintiff had taken Kroger property and was throwing it out of his truck. Plaintiff was arrested and subsequently spent ten hours in jail before being released on bond.
*1188 According to Wheat, broken shopping carts are often put in the alley behind the store to await repairs which are made at regular intervals. McDaniel explained that the metal kick plates plaintiff picked up had been removed from the shelves and stacked on wooden pallets in the alley so that the plates and the floor under the shelves could be cleaned before they were replaced.
Plaintiff Coleman substantially agrees with the narration of the incident as related by the Kroger employees, but his version differs in a few significant details. Plaintiff explained that on the day of his arrest he was in his pickup truck looking for scrap metal and trash in the Southdowns neighborhood, the commercial and residential area where the Kroger store was located. His truck had his name, occupation, address and phone number printed on the side. He testified that he found the metal kick plates in the large trash container behind Kroger's and that he picked up the shopping carts at various points along the streets in the Southdowns area. When Wheat approached him at the stop light and asked him to return the shopping carts, plaintiff was puzzled as to what he meant since he had picked the carts up in various locations. Seeking further explanation, he pulled into the next parking lot but since he did not see the Kroger employees follow him, he dismissed Wheat's request as a prank and continued on his way. When he later saw Wheat behind him, he stopped to find out what he wanted, and at this point he was admittedly aggravated. Only then did he notice for the first time that the shopping carts had Kroger labels. He thereupon began removing the items from his truck and told the Kroger employees they could have them but he was not going to return them.
One of plaintiff's witnesses was the arresting officer, Jerry McLin. He testified that he made the arrest on the information given him by McDaniels. McLin explained that he was told by McDaniels that McDaniels had seen plaintiff leaving the Kroger parking lot and had stopped him on the lot and requested that he return the carts. According to McLin, McDaniels said that although plaintiff then agreed to return the Kroger property, he instead drove away as soon as McDaniels turned his back. McDaniels denied that he had ever made such a statement.
Plaintiff's action is one for malicious prosecution. Such an action will lie only where there is concurrence of the following elements: (1) commencement or continuation of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause; (5) the presence of malice; and (6) damages. Johnson v. Pearce, 313 So.2d 812 (La.1975); Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Eusant v. Unity Industrial Life Insurance, 195 La. 347, 196 So. 554 (1940); Fontenot v. West Bros of Eunice, Inc., 343 So.2d 446 (La.App. 3d Cir. 1977).
The only elements contested on this appeal are malice and lack of probable cause. Appellant Kroger maintains that the jury committed manifest error in concluding that these two elements were proved and urges us to reverse on the authority of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Cf. Motichek v. Clovis-Hendry, Inc., 280 So.2d 225 (La.App. 1st Cir. 1968), writ denied 282 So.2d 522 (La. 1973).
Plaintiff argues that the jury properly found malice in McDaniel's statement to the arresting officer, a statement which allegedly contained inaccuracies designed to make plaintiff appear guilty. However, even if we accept the finding of malice, we must reverse because we conclude that the jury committed manifest error in finding a lack of probable cause on the part of the four Kroger employees who instigated the arrest.
The probable cause element in a malicious prosecution suit requires both an honest and a reasonable belief in the guilt of the prosecuted party. Sandoz v. Veazie, 106 La. 202, 30 So. 767 (1901); Lees v. Smith, 363 So.2d 974 (La.App. 3d Cir. 1978); Whittington v. Gibson Discount Center, 296 So.2d 375 (La. *1189 App. 2d Cir. 1974); Cormier v. Blake, 198 So.2d 139 (La.App. 3d Cir. 1967); Buisson v. Prestia, 45 So.2d 531 (La.App.Orl.Cir.1950). The determination of probable cause depends upon the particular facts of each case because the court must decide whether the circumstances were such as to create the belief in a reasonable mind that the plaintiff was guilty of the crime charged. Motichek v. Clovis-Hendry, Inc., 280 So.2d 225 (La.App. 1st Cir. 1968).
We note that there is but scant evidence on the role of Kroger personnel in the prosecution of plaintiff following his arrest. There is no testimony from which the finder of fact could determine that Kroger employees continued to press for plaintiff's prosecution after the initial arrest, and indeed this is not even alleged in plaintiff's petition. Therefore we are restricted to the issue of whether the Kroger employees had probable cause at that point when the arrest was instigated.
Admittedly there were circumstances which pointed toward plaintiff's innocence. For example, plaintiff made no attempt to conceal the carts even though it was mid-afternoon; plaintiff's name and address were displayed on the truck; and plaintiff never tried to elude the Kroger employees. However, these factors were not of sufficient probative value to overcome the indication of guilt arising from the fact that plaintiff was indeed carrying property belonging to Kroger which some of the employees knew had not been discarded as junk. Plaintiff's failure to return the property when first requested to do so, although understandable from his point of view, appeared to the Kroger employees to be a confirmation of his guilt. We see no evidence that would indicate that their belief in plaintiff's guilt was not both honest and reasonable under the circumstances.
In reversing the jury's findings, we are mindful of the strong presumption in their favor (Canter v. Koehring Co., 283 So.2d 716 (La.1973)) but we also take note of the disfavor in which malicious prosecution actions have traditionally been held by the courts. See Johnson v. Pearce, 313 So.2d 812 (La.1975); Robinson v. Goudchaux's, 307 So.2d 287 (La.1975); Eusant v. Unity Industrial Life Insurance, 195 La. 347, 196 So. 554 (1940); Lees v. Smith, supra; Motichek v. Clovis-Hendry, Inc., supra. The Supreme Court has repeatedly maintained that, "`Actions of this sort have never been favored, and, in order to sustain them, a clear case must be established, where the forms of justice have been perverted to the gratification of private malice and the willful oppression of the innocent'." Sandoz v. Veazie, 106 La. 202, 30 So. 767, 774 (1901) quoting from Staub v. Van Benthuysen, 36 La.Ann. 467, 470 (1884).
For the foregoing reasons, we reverse the judgment of the lower court and render judgment in favor of defendant and against plaintiff at plaintiff's cost.
REVERSED.
NOTES
[*] Serving an appointment by the La.Sup.Ct.