LOTTINGER, Judge.
This is an action ex delicto for damages resulting from the alleged malicious prosecution of the plaintiffs, Freddie Lamar Miller and Johnny Louis Miller. From a judgment in favor of the plaintiffs, defendants appeal.
FACTS
On Friday, November 12, 1982, Mr. Frank Parker, a resident of East Baton Rouge Parish, was brutally assaulted and robbed as he opened a gate in preparation of entering his property. Taken in the robbery was a sum of cash, a pistol, and Mr. Parker’s truck. Lieutenant Cecil Jar-reau, a detective with the East Baton Rouge Sheriff’s Office, was assigned to investigate the case.
In February of 1983, after all leads were exhausted, the crime was re-enacted on “Crime Stoppers,” a program on a local television station requesting information in regards to unsolved crimes. As a result, an anonymous tip implicating Freddie Miller and “his nephew”, as the perpetrators was received. Two days later, the tipster again called and a colloquy was arranged with Lt. Jarreau. The tipster again implicated Freddie Miller and his nephew and informed Lt. Jarreau that Freddie Miller was being held in the St. Helena Parish Prison for an unrelated crime.
Upon investigation, it was learned that Freddie Miller had been in prison, but that he had been released on bond. It was also learned that Eddie Joe Howell, an alleged accomplice in this unrelated crime, was still in prison, so Lt. Jarreau scheduled an interview with him.
Howell informed Lt. Jarreau that he was aware of a number of burglaries and robberies committed by Freddie Miller and one Elden O’Bryant. Furthermore, Howell had advised Mr. O’Bryant regarding a successful modus operandi for a robbery, which modus operandi was identical to that used in the Parker case. In additon, Howell stated that Freddie Miller had bragged to him about committing a brutal robbery with “Johnny,” which robbery was very *25 similar to the Parker case. Also, Freddie had a pistol for sale which he was very anxious to get rid of.
Howell’s information was corroborated in part by his wife in a separate interview. Lt. Jarreau was able to conclude that “Johnny” was actually Johnny Miller, Freddie’s cousin and co-plaintiff in the present suit. This conclusion was based on the tip from Crime Stoppers and implicating statements by both Howells. Furthermore, Lt. Jarreau learned that Freddie Miller owned a truck which fit the description of a truck believed to have been involved in the Parker crime. Finally, it was learned that Eddie Joe Howell was a witness in another case and under the protection of a federal witness program.
Based on the above information, an arrest warrant for Freddie Miller was obtained and executed. After a second interview with the Howells, a warrant for Johnny Miller was obtained and executed.
After a period of incarceration, both Millers voluntarily underwent polygraph examinations. Based on the results of these tests, Johnny Miller was immediately released, and Freddie Miller was returned to prison.
Lt. Jarreau then spoke to the tipster again and learned that the tipster was an inmate with Eddie Joe Howell, and that the two had watched the “Crime Stoppers” segment together.
Howell was administered a polygraph examination, which he failed, and Lt. Jarreau contacted the District Attorney’s office to secure the release of Freddie Miller. For reasons beyond the control of Lt. Jarreau, Freddie Miller was not released until five days later, when Lt. Jarreau contacted the District Attorney’s office a second time.
Throughout this entire period, both Millers asserted an alibi for the time of the Parker case, and offered several family members and friends as alibi witness. For whatever reason, Lt. Jarreau chose not to investigate the alibi or interrogate the witnesses.
The Millers then filed the present suit alleging that they suffered damages as a result of a malicious prosecution and their incarceration. A number of defendants were originally named, with all being dismissed except Lt. Jarreau, the Howells and the East Baton Rouge Sheriffs Office and its insurer.
The case was heard by the trial court without a jury, and a judgment was rendered in favor of each plaintiff in the amount of $50,700 against all defendants except the Howells, who were dismissed from the action. The defendants have perfected the present appeal alleging that the plaintiffs failed to establish the required elements of a malicious prosecution case, and, alternatively, seeking a reduction in the amount of damages.
The tort of malicious prosecution, while recognized, is not favored in our law. Especially is this true in reference to public officials, where only the “grossest negligence or arbitrary and capricious conduct” will support such a claim. Johnson v. Pearce, 313 So.2d 812, 816 (La.1975). The elements of the tort of malicious prosecution are as follows: (1) commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268 (La.1984); O’Conner v. Hammond Police Department, 439 So.2d 558 (La.App. 1st Cir.1983). The elements contested on this appeal are malice and the absence of probable cause.
The probable cause element requires both an honest and reasonable belief in the guilt of the prosecuted party. Jones v. Soileau, supra. In addition, the determination of probable cause depends upon the particular facts of each case, as the court must decide whether the circumstances were such to create the belief in a reason *26 able mind that the plaintiff was guilty of the crime charged. Coleman v. Kroger Company, 371 So.2d 1186 (La.App. 1st Cir.1979), writ denied, 372 So.2d 1041 (La.1979).
The trial judge in the present case concluded that Lt. Jarreau did not honestly and reasonably believe that the Millers were guilty of the Parker offense. The trial judge based his decision on Lt. Jar-reau’s failure to investigate the alibi information provided by the Millers, and the treatment of the Millers “as being guilty instead of innocent citizens until such time as he could glean sufficient information to secure an arrest warrant that was actually based on probable cause.” Because we find this conclusion to be manifestly erroneous and clearly wrong, we reverse the findings of the trial judge.
The facts, as set forth above, were firmly established at trial. Two tips were received implicating Freddie Miller and “his nephew” in the Parker case. Lt. Jarreau’s investigation led him to Eddie Joe Howell who informed the detective of Freddie Miller’s criminal involvment in robberies and burglaries. Howell had advised an alleged frequent accomplice of Freddie Miller regarding a modus operandi identical to that used in the Parker case. Freddie Miller had bragged to Howell about how he and “Johnny” had perpetrated a crime identical to the Parker case. Freddie Miller had a pistol for sale, and owned a truck which fit the description of the one believed to be involved in the crime. Howell’s wife corroborated some of this information and further implicated Johnny Miller. Although Eddie Joe Howell had an extensive criminal record, there was no reason for Lt. Jarreau to doubt the truthfulness of his or his wife’s statements. As support for Howell’s credibility, Lt. Jarreau confirmed the fact that Howell was a participant in a federal witness program.
Lt. Jarreau testified that he did not know either of the Millers prior to this investigation. Also, a district judge in Baton Rouge, contrary to the findings of the trial judge in his reasons for judgment, determined that the above information was sufficient to support arrest warrants on both Millers.
Plaintiffs and the trial judge place much emphasis on the failure of Lt. Jarreau to investigate the Millers’ alibi story. Lt. Jar-reau testified that he did not investigate the alibi because he felt that it was fabricated and it was common in his experience that criminals were often convicted even though they had an alibi supported by the testimony of friends and relatives. While the ignorance of the alibi and the obviously interested witnesses by Lt. Jarreau may not have been the best detective work, we are unable to conclude that this removed probable cause from the circumstances. In addition, Lt. Jarreau stated a number of times that there was no doubt in his mind that he had arrested the perpetrators of the crime.
Therefore, we conclude that Lt. Jarreau acted in good faith and reasonably believed that the Millers were the perpetrators of the crime and the conclusions by the trial judge were manifestly erroneous and clearly wrong.
Therefore, for the above and foregoing reasons, the judgment of the trial court is reversed, and it is hereby ordered, adjudged and decreed that the plaintiffs’ claims be dismissed. Costs of this appeal are to be paid by plaintiffs-appellees. REVERSED.
COLE, J., concurs in the result.